## WILLIAM G. KRUTZ v. PAOLA TOWN COMPANY.

1. INCORPORATION LAWS OF 1855; *General and Special Acts; Paola Town Company.* The general incorporation law passed 24th August 1855, limited the existence of every corporation to the period expressed in its charter, or if no period of limitation was expressed in its charter, then said general incorporation law limited its existence to ten years. On the 30th of August 1855, an act was passed to incorporate the Paola Town Company. This act did not limit the existence of said town company as a corporation to any particular period of time. Under it the Paola Town Company organized October 13th 1855. *Held,* That said town company was created to exist as a corporation for the period of ten years, and no longer.

.2. ———— *Duration of Charter.* Said general incorporation law also provided for the alteration, suspension, or repeal, by any subsequent legislature, of any charter granted to any corporation after said general law was passed, and also provided for closing up the affairs of any corporation upon its dissolution. In 1859 the act incorporating the Paola Town Company, and also the general incorporation law of 1855, were repealed. *Held,* That if said repeal did not have the effect to abolish said Paola Town Company as a corporation in 1859, neither did it have the effect to extend its corporate existence indefinitely, or beyond the year 1865.

3. ———— *Action, in Name of Corporation, After Expiration of Charter.* From the year 1855 up to the commencement of this action, the Paola Town Company owned various town lots in the town or city of Paola. The different members of the town company received lots from the company, and received the proceeds of lots sold by them but belonging to the company. *Held,* That after the year 1865, when the company ceased to exist as a corporation, an action could not be maintained in the name of the Paola Town Company as a corporation against one of its own members who had received property from the company, or had received more than his share of the property of the company, or owed the company. The only proper remedy, in such a case, would be an action by one or more of the members, against the others, for an accounting, and to settle and close up all the affairs of the company.

4. ———— *Party Not Estopped from Denying Existence of Corporation.* And, although a member of the company after the year 1865 might have sold the lots belonging to the company, and might have received the proceeds thereof, and in doing so might have dealt with the company as a corporation, and recognized its existence as such, still, in an action brought against him for such proceeds, and brought in the name of the company as a corporation, he would not be estopped from setting up the defense that the company had prior to that time ceased to exist as a

corporation, and that therefore it no longer had any capacity to sue its members as such; for there is no rule of equity or public policy authorizing an estoppel to be interposed in such a case, but on the contrary it would be against equity, and would also be against public policy as indicated by the statutes.

### *Error from Miami District Court.*

ALL necessary facts and proceedings are stated in the subjoined opinion. The district court, at January Term 1875, gave judgment in favor of the *Paola Town Company*, plaintiff. *Krutz*, defendant, brings the case here on error.

*Sperry Baker*, and *E. Stillings*, for plaintiffs in error.

*B. F. Simpson*, and *W. B. Brayman*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the name of "The Paola Town Company," as a corporation, to recover from William G. Krutz the sum of $19,003.33, with interest. A verdict and judgment were rendered in favor of the plaintiff and against the defendant for the sum of $7,956.04; and the defendant now brings the case to this court for review. Many questions were raised in the court below, and several of them are insisted upon in this court, but it will be necessary for us to decide only two or three of them.

The first and principal question involved in the case is, whether "The Paola Town Company" had any legal corporate existence at the time this suit was commenced. That it was once a valid corporation, is admitted; but it is now claimed that it ceased to exist as a corporation long before the commencement of this action. The record shows that said Town Company was duly organized as a corporation on 13th October 1855, under an act of the legislature of the Territory of Kansas passed 30th August 1855, entitled "An act to incorporate the Paola Town Company." (Council Journal, pp. 180, 182, 204, 228, 251; House Journal, pp. 273, 285, 354; Laws of 1855, p. 829.) This act did not limit the existence of said corpo-

1. Corporation laws of 1855; general, and special.

ration to any particular period of time; nor did it prescribe any grounds, or cause, or time, or manner, for closing up the affairs of such corporation; but the general law, with reference to corporations, did. This general law was passed by the same legislature that passed the Paola Town Company act, and was passed and took effect just six days prior thereto, to-wit, on August 24th. (House Journal, 314; Laws of 1855, pp. 185 to 193.) This general law provided among other things, as follows:

"SEC. 1. Every corporation as such has power—*first*, To have succession by its corporate name for the period limited in its charter, and when no period is limited, for *ten years.*" * * *

"SEC. 7. The charter of every corporation that shall hereafter be granted by law, shall be subject to alteration, suspension, or *repeal* by any succeeding legislature; *provided*, such alteration, suspension, or repeal, shall in nowise conflict with any right vested in such corporation by its charter." (Laws of 1855, pp. 186, 187.)

And section 24 of said general law provided for closing up the affairs of all corporations upon the dissolution thereof. (Page 190.) The act incorporating the Paola Town Company, as well as the general incorporation law of 1855, was repealed in 1859; (Laws of 1859, p. 317, § 37; p. 326, § 67; p. 544, § 1.) Whether these repealing statutes had the effect to destroy the corporate existence of the Paola Town Company in 1859, or not, we shall not now decide; for we do not think that it is necessary to make any decision upon the subject in this case. But if they did not, then said town company ceased to exist as a corporation in 1865. For, under the laws of Kansas, as they existed in 1855, when this corporation was created, it was created to exist only for ten years. And if the repeal of all these corporation laws of 1855, by said repealing statutes of 1859, did not have the effect to abolish this corporation, neither did such repeal have the effect to extend the existence of such corporation indefinitely, or beyond the year 1865. The existence of a corporation might be destroyed by the repeal of

*2. Duration of charter.*

a statute; but we do not think that the existence of a corporation could be created merely by such appeal. A corporation must find something better than the mere repeal of a statute upon which to found its corporate existence. It certainly cannot be claimed for a corporation, whose charter has been repealed, and whose full time for which it was created has expired, that such corporation still exists, merely because the statute limiting its existence was repealed at the same time its charter was repealed. Said town company ceased to exist in 1865, not only as a corporation *de jure,* but also as a corporation *de facto.* The last meeting held by the company prior to 1859, prior to 1865, and indeed prior to the 4th of July 1867, was held on 29th June 1858. At this meeting the company elected officers for the term of one year. The next meeting was held on the 4th of July 1867. At this meeting the company again elected officers for the term of one year. No other meeting was held subsequent to June 29th 1858, and prior to the commencement of this suit.

But it is claimed by the defendant in error, plaintiff below, that even if said town company did cease to exist as a corporation in 1859, or in 1865, still, that Krutz afterward dealt

4. Dealing with defunct corporation; estoppel.

with the company as a corporation, and recognized its existence as such, and therefore that he thereby placed himself in such a condition that he must forever afterward be estopped from questioning the corporate existence of such company. Now, that Krutz dealt with such company, or perhaps more properly speaking recognized its existence, after 1865, is unquestionably true; but whether he recognized the existence of the company as a corporation, or only as a copartnership, is not definitely shown. The weight of the evidence however would seem to indicate that he did not recognize it as having much power, or force, or legal existence, of any kind. But still we think he so recognized the existence of the company that he would in any proper suit be held to be estopped from denying his responsibility for any property which he ever received from the company. This Krutz admits. He admits that he is

bound by all the dealings which he has ever had with the company, or with any agent or supposed agent thereof; but he simply denies that the company was a corporation when this suit was commenced; and he therefore claims that the company had no capacity to sue in this action. He claims that the proper action would be by some one or more of the members against the others for an accounting. The company was organized, as we have already stated, in 1855. Krutz became a member thereof on 27th June 1857, by purchasing one-sixth interest therein. W. R. Wagstaff also became a member thereof at the same time, by purchasing a like interest in the company. At the said meetings of the company held in 1858 and in 1867, Wagstaff was elected agent and secretary of the company — each time for the period of one year. In 1868 Krutz and Wagstaff entered into an arrangement for the purpose of buying up all the stock, and selling and disposing of all the property of the company. In pursuance of this arrangement they did purchase nearly all of said stock, and did dispose of nearly all of said property. This property consisted principally of town lots in the town or city of Paola. Wagstaff, as the agent of said town company, made all the deeds for all the lots sold and disposed of by himself and by Krutz, and by the other members of the town company. Whether Krutz got more than his share of the property of the town company, or of the proceeds thereof, we cannot tell, for the evidence does not show; and this action was not commenced for the purpose of ascertaining any such thing. This action was brought for a different purpose. It was brought by Wagstaff, as the agent of the town company, in the name of said company, for the purpose of recovering from Krutz all the proceeds supposed to have been received by Krutz for lots conveyed by Wagstaff as agent of the company. This is about all there is of the case. And from this it will be seen, that it would be highly inequitable and unjust to estop Krutz from claiming that said town company no longer has any corporate existence. The only proper remedy for Wagstaff, or for any of the

Action to account.

other stockholders of the town company, would be an action for an accounting between all of such stockholders, and to settle and close up all the affairs of the corporation. The company should not recover a judgment against Krutz for all the property, or the proceeds of property, received by him, for in equity and justice nearly one-half of the same belonged to him. Perhaps in equity and justice nothing should be recovered from Krutz either by the company or by any of its members, for perhaps in fact Krutz has not yet received the full amount of his interest in the company. Other members of the company also received lots, and sold lots, and perhaps something is really due from them to him. But this action shuts out all inquiries into these matters. It shuts out all equitable accounting between the members of the company, and between the company and its members. By it, Krutz must pay the company or its agent for all the lots he has ever received, or sold, although perhaps he has not yet received his full share of the property from the company. This is not right. Except for some rule of public policy, or of equitable estoppel, this action cannot be maintained; for it is brought in the name of the company, as a corporation, when in fact no such corporation exists. The company really has no capacity to sue as a corporation. It does not claim to sue as a copartnership; but if it did, it could not sue one of its own members, as has been done in this case. Now we know of no ground of public policy, or of equitable estoppel, that would prevent the defendant from setting up in this action the defense that said company has no existence as a corporation. Public policy, and equity, as well as the law, required that this company should cease to exist as a corporation in 1859, or in 1865; that it should close up its affairs as a corporation as speedily as possible, and that each member of the company should then receive his due proportion of the property of the company. And it is not in accordance with either public policy, or equity, or law, that the company should still claim to have a corporate existence, and

*Equitable estoppel; public policy.*

should now harass its own members by bringing suits against them which it can maintain only in the capacity of a corporation. This suit is not equitable. If Krutz has not received more than his share of the property of the company, he should not be compelled to pay to this supposed corporation, or to its agent, $7,956.04. It would not be equitable to allow this defunct corporation to recover this amount from him, when perhaps upon a final accounting and settlement the same or a greater amount should be paid back to him. The only remedy of the defendant to defeat this inequitable action is to show the fact that the town company as a corporation no longer exists. But if he can be prevented from showing this fact by the interposition of what is supposed to be an equitable estoppel, then an equitable estoppel may be invoked against equity, and to defeat equity. This would be a new use of equitable estoppel. Where it is equitable however to estop a party from denying the existence of a corporation, it is often done, and is usually so done; and it could probably be so done in this case if it were equitable to do so. Sometimes also upon grounds of public policy, and not upon any grounds of equitable estoppel, parties are not allowed to question the existence of a corporation. Thus, *where there is a law* under which a corporation may exist, and under which the corporation in question is acting, and claiming to exist, and is a corporation *de facto,* and the only ground for claiming that such corporation does not exist is some irregularity in its organization, or some ground for a forfeiture of its charter, private persons, whether members of the supposed corporation or not, are not allowed in collateral proceedings to question the existence of such corporation. But that is not this case. In this case *there is no law* under which the company is acting, or claiming to exist; and the supposed law under which the company claims to exist was repealed in 1859. Hence, unless equitable estoppel can be invoked, the defendant cannot be precluded from interposing as a defense the non-existence of the plaintiff as a corporation. But as we have already seen, equitable estoppel cannot be invoked in

this case, because it would be inequitable to permit it to be done. Usually, before equitable estoppel can be invoked, some fraud or overreaching must have intervened. But no fraud or overreaching intervened in this case. Both Krutz and Wagstaff acted in the best of faith, so far as is shown. Neither had any intention of defrauding the other, or of defrauding the company, or of defrauding any member thereof. But after acting harmoniously together for a long time, a misunderstanding arose between them, and this action was commenced as a result of such misunderstanding. And it was commenced under a misapprehension as to the *status* of the town company. The parties commencing it evidently supposed that the town company still existed as a corporation, and therefore that this action was the only proper remedy. They evidently did not think that this action would do Mr. Krutz the injustice that it must necessarily do him if it should be sustained. The invoking of the aid of estoppel was evidently an afterthought.

The judgment must be reversed.

All the Justices concurring.