DARTMOUTH SAVINGS BANK, Respondent, *v.* SCHOOL DISTRICTS 6 AND 31, MINNEHAHA COUNTY, Appellants.

**Schools and School Districts — Creation — Bonds — Validity—Estoppel.**

> By § 10, chap. 40, Pol. C., it was made the duty of the county superintendent of schools " to divide his county into school districts, sub-divide and rearrange the boundaries of the same, when petitioned by a majority of the citizens residing in the district or districts to be affected by such change." The records of the superintendent showed the formation of district 64 from parts of 6 and 31 and that it had afterward been dissolved and merged in the original districts. During its separate existence a number of its citizens met, elected officers and voted a tax. These officers afterward executed bonds for the purpose of erecting a school-house. In an action on these bonds against districts 6 and 31 as the successors of 64, on an issue of the legality of its organization, the defendants offered to prove that the superintendent had never been petitioned as required by law. The court refused to permit the proof. *Held,* error. *Held also,* that the defendants were not estopped to question the legality of the organization of district 64.

(Argued Oct. 2, 1888; reversed Oct. 13, 1888; opinion filed Oct. 9, 1889.)

APPEAL from district court, Minnehaha county ; Hon. C. S. Palmer, Judge.

*Bailey & Davis,* for appellants.

The corporate existence of district 64 was in issue. It was incumbent on the plaintiff to establish that all requirements of the statute had been complied with. Waterman, Cor., §§ 33, 38, 143, 144 ; Bigelow v. Gregory, 73 Ill. 197.

By the statute (§ 10, chap. 40, Pol. C.) under which these dis-

tricts are organized the first requirement is a petition of a majority of the citizens residing in the districts to be affected. This is jurisdictional. Without it the superintendent cannot act. The petition is necessary to set in motion his powers. The burden was upon the plaintiff to establish all jurisdictional facts. Jackson v. Trustees, 8 Johns. 378 ; Utley v. Union Tool Co., 11 Gray, 139 ; Mokelumne Hill Co. v. Woodbury, 14 Cal. 424 ; McGarrahan v. Mining Co., 96 U. S. 316, L. Ed. 24, 630 ; Kaiser v. Lawrence, 56 Ia. 104, 8 N. W. Rep. 772 ; Norton v. Shelby County, 118 U. S. 425 ; 14 Am. & E. C. C. 487 ; Cooley, Tax. 517.

If the district had no legal existence or legislative authority to issue the bond the plaintiff must fail. No recital could cure these defects, or preclude inquiry into the want of power even in the hands of innocent holders. Anthony v. Jasper, 101 U. S. 693, L. Ed. 25, 1005 ; Wells v. Supervisors, *supra ;* Northern National Bank v. Porter, *supra ;* County v. Field, 111 U. S. 83, L. Ed. 28, 360 ; Merchants' National Bank v. Bergin, 115 U. S. 384, L. Ed. 29, 430 ; 1 Dill. Mun. Cor., § 509.

The defendants were not parties to the bond, nor did they participate in the transactions out of which it arose. The plaintiff has no superior equities as a *bona fide* holder. In fact the equities are with the plaintiff as it can pursue the parties who made the ineffectual attempt to incorporate the district and set the bonds afloat. The defendants would be without remedy if it paid the bond. Waterman, Cor. 100, n. ; Kaiser v. Lawrence, 56 Ia. 104, 8 N. W. Rep. 772 ; Bigelow v. Gregory, 73 Ill. 197.

We admit the legislature has power to alter or abolish a municipality and apportion its property and burdens as seems just. Mount Pleasant v. Beckwith, 100 U. S. 514, L. Ed. 25, 699.

But this does not imply that a portion of the inhabitants of two districts may organize under a general law into a *de facto* district, locate and build a school-house that neither of the other districts wants, incur a useless debt, dissolve and impose the burden on the old districts against their will. Again before this rule can be applied, a contract valid and binding in law must be established. The doctrine of estoppel, or of rights of *bona fide* holders afford no advantage.

*Wynn & Young*, for respondent.

" Every school district shall be deemed duly organized when the officers constituting the district board shall, be elected and qualified." L. 1879, p. 202, § 23.

As to the point of there being no evidence of any petition, we say that was one of the preliminary steps in forming the district. The evidence is that the district was formed. It organized and elected officers, levied taxes, issued bonds, built a school-house, assumed to act, and did act and exercise the powers of such a corporation. The presumption also is that the county superintendent proceeded lawfully to form the district. By his act and decision the district was formed, and was subsequently organized in the mode prescribed by statute. Any inquiry as to the regularity or irregularity of his proceedings is now immaterial. Narragansett Bank v. Atlantic Silk Co., 3 Met. 287; State v. School District, 14 N. W. Rep. 382; State v. School District, 12 id. 812; State v. School District, id. 927. The defendants are also estopped to deny the legality of the organization. Bigelow, Estoppel, 463; Wood's, Field, Law of Corp., §§ 349, 356; Dooley v. Cheshive Glass Co., 15 Gray, 494; Merrick v. R. E. & G. Co., 101 Mass. 385; McCarty v. Lavasche, 89 Ill. 270; Ewing v. Robeson, 15 Ind. 29; Hills v. District Township, 41 Ia. 494; Angel & Ames, Corp. 71, n. ; Herman, Estoppel, 512.

The same rule applies to districts 6 and 31, as they are the successors, not only of the corporate powers, but the liabilities of 64.

The district had the power to issue the bond in question under the act of February 22, 1879, and the bond upon its face contained a recital of a performance of all acts necessary to be done in order that it might issue. This is conclusive as to the point made. Burroughs, Pub. Sec. 299; Knox v. Aspinwall, 21 How. 539, 62 L. Ed. 208; Town v. Eaves, 92 U. S. 484; Marcy v. Township, 92 U. S. 638; Humboldt v. Long, id. 642; Hackett v. Ottawa, 99 id. 86; Commissioners v. Bolles, 94 id. 104; Commissioners v. Clark, id. 278; Commissioners v. January, id. 202; County v. Cromwell, 96 id. 51; City v. Mehaffy, id. 312; County v. Shores, 97 id. 272; City v. Rit-

ter, id. 389; Larned v. City, 4 Wall. 275; Township v. Ker-
nochan, 103 U. S. 562; Mercer v. Hacket, 1 Wall. 83; Grand
Chute v. Winegar, 15 id. 355; City v. Butler, 14 id. 282; Dem-
ming v. Inhabitants, 18 Am. Rep. 253 and n.; 1 Dill. Mun.
Corp. 506; Bigelow, Est. 467.

The district was a corporation *de jure* at the time the bond was
issued.  Even if there were defects in the preliminary organiza-
tion, it became a district fully empowered to act by the decision
of the superintendent in forming it, and by the election of its
officers.  The superintendent was, by the power given him to
form districts, the sole judge of the sufficiency of the original
petition and the preliminary steps.  His decision was final, so far
as the organization was concerned, and when the district officers
were elected, then, by the express terms of the statute, the organi-
zation was deemed complete.  While insisting on this we submit
that it was clearly a corporation *de facto*, at the time of the issu-
ance of the bond, and that its acts were, as to the public, and
persons contracting with it, as valid as those of a corporation *de
jure*, and not subject to collateral inquiry.  People v. La Rue, 67
Cal. 526; Trumbo v. People, 75 Ill. 562; Leach v. People, 12
N. E. Rep. 726; State v. Carroll, 38 Conn. 449, 12 Am. Law
Reg. (N. S.) 165; People v. Bangs, 24 Ill. 124; S. & L. G. R.
Co. v. S. & C. R. R. Co., 45 Cal. 680; People v. Webber, 86 Ill.
283, 2 Dill. Mun. Corp. (3d ed.), § 892, n. 1; Wilcox v. Smith,
5 Wend. 231, 21 Am. Dec. 213; Burke v. Elliott, 4 Ired. L.
355, 42 Am. Dec. 142; O. & B. R. R. Co. v. Plumas Co., 37
Cal. 361; Hildreth v. McIntyre, 19 Am. Dec. 61, n.; B. & A. R.
Co. v. Cary, 26 N. Y. 75.

TRIPP, C. J.  This is an action to recover upon a bond and its
interest coupons, alleged to have been issued by school district
No. 64, Minnehaha county, Dak.  The complaint, in substance,
alleges that school district No. 64 was duly organized from por-
tions of school districts Nos. 6 and 31 of said county; and that,
as such corporation duly organized, it issued by its proper officers
the bond in controversy, among others, to aid in the construction
of a school-house for said school district No. 64, in accordance
with the statute in such case made and provided; that plaintiff
became and is now the owner and holder of such bond for value

before maturity; that said district No. 64 has been dissolved, and that said defendant districts, 6 and 31, are the successors thereof. The principal defense set up and relied upon by the defendants is that said district 64 was never organized; that it never had any legal existence; and that the issue of said bond was without authority of law, and, therefore, illegal and void.

The issues were submitted to a referee, and the court, upon the report of the referee, made findings of fact and conclusions of law sustaining the organization of district 64, and rendered judgment for the plaintiff. Exceptions were duly taken to the findings and conclusions of law, and from the judgment so entered the defendants appeal to this court.

An inspection of the bill of exceptions and the record of the case shows that long prior to the execution and issue of the bond in controversy defendants were duly-organized school districts of Minnehaha county, numbered 6 and 31, respectively; that on the 12th day of March, 1879, the superintendent of schools of the county of Minnehaha claimed to have formed school district 64 from a part of said districts 6 and 31; that subsequently a number of the citizens of said school district 64 met together and elected officers, voted taxes, etc.; that subsequently the officers so elected executed and issued the bond in question, with others, for the purpose of erecting a school-house in said district 64; that said school-house was subsequently erected with the proceeds of such bonds, and that subsequently to the issue of said bond, upon an appeal from the action of the county superintendent of schools to the board of county commissioners, as provided by statute, the proceedings of the superintendent of schools creating such school district 64 were reversed, and the territory carved out of districts 6 and 31 was again restored to them. It does not appear from the record which district, upon the dissolution of district No. 64, obtained the house erected with the proceeds of the bonds, or what, if any, use was ever made of it by such district.

The statute then in force as to organization of new districts by the county superintendent of schools provides as follows: "Districting the county. That it shall be the duty of the county superintendent of schools, in addition to other duties required of him, to divide his county into school districts, subdivide and re-

arrange the boundaries of the same, when petitioned by a majority of the citizens residing in the district or districts to be affected by said change, and to furnish the county commissioners of such county with a written description of the boundaries of each district, which description must be filed in the register of deeds' office before such district shall be entitled to proceed with its organization by the election of school district officers; and it shall be his duty to keep on file in his office all petitions and remonstrances, which shall show the date of reception and the action had thereon; and it shall be his further duty, on the division of or change of district boundaries, to notify the clerk of the districts interested of the change made." § 10, chap. 40, Pol. Code 1877.

The only evidence of the creation of school district No. 64 was an extract from a book kept by the county superintendent of schools, designated as the "Book of Records of the Formation of School Districts," which reads as follows: "School District No. 64. 1879, March 12.— Formed of sections S. E. $\frac{1}{4}$ section 28, S. $\frac{1}{2}$ of sections 26 & 27; all of sections 34 & 35; the east $\frac{1}{2}$ of section 33, township 101, range 48. Not in separate existence. Is now merged in districts 6 & 31." The statute did not then require the keeping of such a record. There were also some entries in records of school districts 6 and 31, of similar character. No petition to the superintendent of schools, of citizens of the districts to be affected by the change, nor any written description of the boundaries of the districts filed in the register of deeds' office, was offered in evidence, and no parol or other evidence was offered, except as above stated, to prove that district 64 was ever created or organized, except in so far as the production of the bond and proof of its execution tended to do so, and the record of the district meeting at which the tax was voted and officers elected. On the other hand, after the plaintiff had rested its case, the defendants offered to prove that no such petition was ever in fact presented to the superintendent of schools, and this offer was rejected by the court and referee, but upon what ground the record does not disclose.

From an examination of section 10, *supra,* and other sections of the school law in force when the bond in controversy was

issued, it will be observed that the county superintendent of schools was vested with power to create and change the boundaries of school districts within his county in the manner and under the conditions prescribed by the statute. It was not intended by the legislature, nor can any interpretation of the statute be given, to allow him the arbitrary power of making and unmaking districts at will; and whatever may be the extent of his power or the effect of his decision in creating new districts from those already formed, and whether such power was merely ministerial or *quasi* judicial in character, it is clear that it could not be brought into exercise, except in the manner pointed out by the statute, and upon the happening of those events or the performance of those acts which gave him jurisdiction in the premises. Two things are specifically required to be done before the citizens of any proposed district can meet and organize: *First*, "a majority of the citizens residing in the district to be affected by the change must petition the county superintendent of schools;" and, *second*, "the county superintendent of schools must furnish the county commissioners with a written description of the boundaries of each district, which description must be filed in the register of deeds' office." And these requirements are not left for the courts to construe as mandatory, for the legislature has made them so by express enactment, saying they shall be done "before such district shall be entitled to proceed with its organization." Can it be said, in the face of such a statute, that the presentation of a petition and the furnishing and filing of a description of the school districts are merely directory, and that a failure to comply with such requirements is a mere irregularity? If there were no good reason for such legislation, its meaning could hardly be mistaken; and were the language of the statute doubtful, courts would be slow to give it a construction different from what its present language makes plain and unmistakable. It could never have been a supposed intention of the legislature that county superintendents of schools should make and unmake districts without regard to the wishes or will of those to be affected thereby. The petition of a majority of the citizens residing in the district to be affected by the change is the prerequisite to the exercise of his jurisdiction; and without expressing any opinion or intimation as to how far any action of his in

determining when such petition contains a majority, as required by the statute, or when such change shall or shall not be made, is or may be final, except in so far as it may be reversed on appeal by the board of county commissioners, we are clearly of the opinion that, in absence of such petition, his action is without jurisdiction, and is void.   He is vested with power to act upon presentation of a petition, and not otherwise.   As well might a justice of the peace or other tribunal render judgment against persons or property without issue of process.   The making and presentation of the petition to him is a jurisdictional fact, which must be established when denied, and required to be proved, to give validity to the judgment or decision relied upon as ultimate proof of the matter in issue.   The statute requires such petition to be filed in the office of the superintendent of schools, and he is required to enter thereon his action in the premises.   In this case not only was no such petition offered in evidence, and no attempt made to account for its loss, if it ever existed, but, when the superintendent of schools is presented as a witness in the case, no question is attempted to be asked him as to whether in fact such petition was ever presented, or what, if any, action was taken thereon.   These facts, coupled with the ruling of the court rejecting the defendants' offer to prove that no such petition was ever in fact presented, clearly show that the lower court deemed the statute directory, and that a failure to present such a petition would not affect the action of the superintendent in creating the district in question.   This action of the court in refusing to allow the defendants to show that no petition was in fact ever presented to the superintendent of schools, was, in our judgment, clearly error, unless defendants are estopped from making such proof, which we shall discuss further on; and we shall not, therefore, inquire whether it was incumbent upon the plaintiff to prove such fact in the first instance, under the issues in this case; nor shall we examine the many other alleged errors complained of by defendants.

The question, as presented by the record, is, was this alleged school district 64, assuming to act through some of its citizens, without having performed the requirements of the statute, a legal corporation?   The legislature may make and unmake municipal

corporations at will, having always a care not to disturb vested rights or impair the obligation of contracts. Subject to such restrictions, municipal governments may be said to be creatures of the statute; and, instead of creating them directly, as in case of municipal charters, the legislature may by general incorporation acts prescribe the manner in which districts or people may obtain corporate rights and assume corporate liabilities; but in doing so the legislature is not considered as delegating any of its legislative power, either to the people or to the person or officers who assisted in the incorporation. The law creates the corporation, and the · performance of the conditions required qualifies the corporation to act. It is by the performance of the requirements of the statute that they are permitted to exercise the powers of municipal government. These are conditions precedent, and must be performed; and no power less than the legislature itself can dispense with their performance, or ratify an imperfect or incomplete incorporation. It is true, many of the provisions of general incorporation laws are mere matters of procedure, and are directory in character, but such requirements as are prescribed by the section under consideration are matters of substance, conditions material and precedent to incorporation, a failure to perform which will make subsequent facts illegal and void, except in so far as they may receive vitality or validity from estoppel or prescription. For the purposes of this case it must be presumed that the defendant could prove what he offered to prove, to-wit, that no petition was ever presented to the county superintendent of schools; and it must, therefore, be presumed that this condition precedent was not complied with; and it follows that, upon the case presented, school district No. 64 never was incorporated, and that the issue of the bond in question was without authority of law, and, therefore, illegal and void.

The plaintiff replies to this by saying that if the incorporation of school district No. 64 was illegal and void, having held itself out as a corporation, and having sold and disposed of its bonds to an innocent purchaser, defendant will be estopped from asserting such incapacity to contract, and that these defendants, as its successors, are so far privies in law as to estop them also from making such defense.

It is true that the rule of common law which held estoppel to be odious and to be looked upon with disfavor by the courts has to some extent been modified by the modern decisions; but we are aware of no case in which the doctrine of estoppel has been carried to the extent contended for here. The plaintiff asks not only that district No. 64 should be estopped from denying its incorporation, but that districts 6 and 31, which were in no manner privy to its assumed acts of incorporation, and one of which at least has in no manner received any benefit therefrom, if either can be said to have done so, shall also be estopped from making this defense.

The law which permits suits to be brought against all the successors of a corporation, where no provision is made for existing liabilities in the act or judgment of dissolution, is one of necessity, arising out of the provision of our constitution, which forbids legislatures from passing any law impairing the obligation of contracts; and the harshness of the rule is made evident in this case, where it is admitted that, while one only of these districts by virtue of the dissolution of district 64 becomes the owner of the house or property for which the proceeds of the bond were expended, the other one, in proportion to the extent of its territory, must equally, under the rule contended for, bear its proportion of the indebtedness incurred without its sanction, and perhaps without its knowledge. The doctrine by which privies who succeed to the benefits must also assume the consequent liabilities does not obtain here, nor is there any contract upon which such privity can be founded. None of the essential principles of estoppel apply to these defendants. They have not willfully or fraudulently done or omitted to do any act, relying upon which this plaintiff or its grantor has acted to its injury. Nor does the record disclose that they have ever counseled or become party to such act or omission; but for aught that appears in the record these districts defendant have continuously opposed the unwarranted and unlawful acts of the superintendent of schools, and a few self-constituted officers of this *pseudo* corporation; or, for aught that appears of record, they may have been wholly ignorant of the unlawful or fraudulent acts of such pretended officers. In either case, they would not have so held out the incorporation, or failed to deny

its existence, as to bring themselves within any principle of the doctrine of estoppel, if a public or *quasi* public corporation can ever be estopped from denying its incorporation. It is true, there are cases in which the rule is announced that, where the corporation has contracted as such, it shall be estopped to deny its incorporation ; but it is believed that upon an examination of the cases it will be found that they are all private corporations, and that, under the peculiar circumstances of each case, the law of estoppel could well be invoked. Such is the case of Dooley v. Glass Co., 15 Gray, 490, relied upon by the defendant, in which, under the laws of that state, certain private persons, as required by statute, had filed a certificate over their own signatures, setting out the fact of their incorporation, which being offered and received in evidence, the defendants were held to be estopped to dispute the facts therein set forth. And this is as far, perhaps, as any case has gone, and is the one most frequently cited and relied upon for the doctrine here contended for. I have not had access to all the cases cited by text-writers in which it is claimed that the doctrine is maintained, but it is safe to assume that the facts of each case bring them within some of the well-recognized principles upon which the doctrine of estoppel is founded.

The general rule is that the defendant may always show that the contract was *ultra vires;* and, while the rule is subject to many exceptions and modifications as applied to the facts of given cases, yet, as applied to public and *quasi* public corporations, in which the party contracting has equal opportunities with the other to know its powers, it will be found that the exceptions are infrequent, and come clearly within the rules above given. It was thought for some time that the supreme court of the United States, by the rigid manner in which it upheld the contracts of municipalities in issuing bonds in aid of railroads and other works of internal improvement, had broken down the defense of *ultra vires* as applied to public corporations ; but the later decisions of that court explain the former cases, and limit the former language of the court to the facts of the case in which it was used, and the points therein determined. That court has now recently held that " the facts which a municipal corporation issuing bonds * * * is not permitted to deny against a *bona fide* holder in face of the

recital in the bond are those connected with or growing out of the ordinary duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued." Bank v. Porter Township, 110 U. S. 608, 4 Sup. Ct. Rep. 254. And in Hayes v. Holly Springs, 114 U. S. 127, 5 Sup. Ct. Rep. 785, the court says: "Even·a *bona fide* holder of a municipal bond is bound to show legislative authority in the issuing body to create the bond. Recitals on the face of the bond, or acts *in pais*, operating by way of estoppel, may cure irregularities in the execution of a statutory power, but they cannot create it."

Measured by this rule, estoppel could not create the power to execute the bond in question; no power but that given by the legislature could execute it. This same court has held over and over again that, " where there is a total want of authority to issue municipal bonds, there can be no *bona fide* holding of them." Oakland v. Skinner, 94 U. S. 255; Ottawa v. Carey, 108 id. 110, 2 Sup. Ct. Rep. 361; Lewis v. Shreveport, 108 U. S. 282, 2 Sup. Ct. Rep. 634. Says the supreme court of Indiana, which is cited by respondent as holding that where a corporation has received the full benefit of a contract it is estopped from setting up that it is *ultra vires :* " There is a broad difference between a private corporation organized for a private purpose, though subserving a public interest, and a public corporation, like a county or city, organized for public purposes only, and whose obligations must be paid from public funds, raised for public purposes only. The latter class of corporations may always defend on the ground that the supposed contract was outside of authority conferred on it by law." Turnpike Co. v. Board, 72 Ind. 226. And the same doctrine is laid down by Dillon on Municipal Corporations, § 381. See, also, Mayor v. Ray, 19 Wall. 468.

Where a private individual signs a paper or contract he may often be well estopped to say that he had no power so to do; whereas, if an agent or person assuming so to act had done so for him, he might well deny his authority. The government must always act through agents; and to say that the government or municipality shall not be permitted to deny the authority of some

self-constituted agent, who has assumed to act for it, would be to withhold from the public rights acknowledged to belong to private individuals. Again, on the grounds of public policy as well as for the reason that public corporations are open to all persons to be informed of their powers, the rule of estoppel is applied with less rigidity, and in cases of greater infrequency. Says the supreme court of the United States in Whiteside v. U. S., 93 U. S. 257: " Although a private agent, acting in violation of specific instructions, yet within the scope of his general authority, may bind his principal, the rule as to the effect of the like act of a public agent is otherwise, for the reason that it is better that an individual should occasionally suffer from the mistakes of public officers or agents than to adopt a rule which, through improper combinations or collusion, might be turned to the detriment and injury of the public." See, also, Mayor v. Eschbach, 18 Md. 282; Lee v. Monroe, 7 Cranch, 376. Judge Story, in his work on Agency, § 307a, in distinguishing between public and private agents, says: "Indeed, this rule seems indispensable in order to guard the public against losses and injuries arising from the fraud or mistake or harshness and indiscretion of their agents. And there is no hardship in requiring from private persons dealing with public officers the duty of inquiry as to their real or apparent power and authority to bind the government."

Any other rule would open wide the door to fraud, and an adoption of the rule contended for by respondent in this case would put it in the power of corrupt and designing men to involve in debt, if not to bankrupt, whole classes of people. Three or more persons sufficient to fill the offices of a school district could conspire together, and elect officers of a proposed school district, and issue its bonds, and dispose of them to an innocent purchaser; and in case of suit brought, the district, its successors, or the tax payers thereof, though for the first time apprised of such indebtedness, would be estopped to deny the existence of such a corporation, because these self-constituted, but unauthorized persons have said by their acts it is a corporation. While the courts are disposed to protect the rights of innocent purchasers and to uphold commercial paper, the rights of a people will be much better protected, and the principles of commercial law sufficiently extended

by requiring all persons dealing with public officers and public corporations to inquire into their powers, and to see that they are authorized to enter into the contract they assume to make.

Again, while it is true that the rule has been somewhat modified which formerly required the pleader to allege and prove the incorporation of the defendant as well as that of the plaintiff, and that now in many of the states the general denial will not place such incorporation in issue, as is the case in our own territory by express enactment, yet, where the incorporation is made an express issue, as in the present case, the defendant should not be denied the privilege of maintaining its defense, unless in the opinion of the court some great wrong or injustice would be done the plaintiff thereby, especially where the defendant is a public corporation, and has in no manner, by pleading or otherwise, been apprised of such intention on the part of the plaintiff previous to the trial itself.

The plea of estoppel is largely in the discretion of the court, to be determined upon the facts of each case. It would hardly be urged to the court that the minor ought not to be heard to assert his minority, or the drunken man his intoxicated condition, simply because he contracted as an adult or as a sober man would contract. The law makes such contracts, when proven, voidable; the law makes such contracts as this absolutely void. Certainly what would not be tolerated in case of voidable contracts ought not to be urged with much force in case of void contracts.

Upon an examination of the cases in which the doctrine of estoppel is sought to be applied to public corporations, it will be found that in many of them the issue was sought to be raised collaterally, as in case of collection of taxes, and in resisting the acts of an officer by showing the illegality of his appointment, etc. The conclusions arrived at in such cases, or the reasons given therefor, are not applicable here, where, as we have seen, the issue is made directly by the answer itself.

A careful examination of the whole case satisfies us that this is not a proper one for the enforcement of the principles of estoppel, and that the court erred in not permitting the defendants to prove the failure of the citizens to present a petition of a majority of the citizens of the districts to be affected by the organization of

school district No. 64; and the judgment of the lower court is, therefore, reversed, and a new trial awarded. All the justices concur.