## WM. N. COLER & CO. *vs.* DWIGHT SCHOOL TOWNSHIP.

Opinion filed April 25th, 1893.

**De Facto Municipal Corporation.**

The county superintendent of schools, under chapter 14, Laws 1879, organized a school district, school district officers were elected, and exercised the functions of their respective offices; teachers were employed by the district, and school was taught therein, and a school meeting was held in the district to vote upon the question of issuing bonds to build a school house. Such bonds were thereafter issued. In an action upon some of the interest coupons of such bonds, *held,* that the district was a *de facto* municipal corporation, and that therefore the defense could not be interposed that the bonds were void on the ground that the district had no legal existence because of failure to comply with provisions of the statute regulating the organization of such districts in matters which went to the jurisdiction of the county superintendent to organize the district.

**Estoppel by Recital in Bonds.**

Municipal corporations are estopped, as against bona fide holders of municipal bonds, from setting up as a defense to an action thereon that all the preliminary steps necessary to authorize the issue of the bonds were not taken, when the officers who have charge of the issue of such bonds are especially or impliedly authorized to determine whether all the conditions precedent to the issue of valid bonds have been complied with, and recite in the bonds so issued that they have been complied with. It is not necessary to estop the corporation that this statement should set forth in detail that all the preliminary steps have been taken. It is sufficient that it declare that the bonds are issued in pursuance of a certain statute, specifying it. Neither is it essential that the officers issuing the bonds should be expressly authorized to determine such questions. It is sufficient if they are given full control in the matter.

**Organization of District—Liability for Debts.**

A school township organized under Ch. 44, Laws 1883, becomes, immediately upon such organization, liable for debts of a district, the school house and furniture of which become the property of the school township. This liability is complete, and does not depend upon the settlement of equities between several districts included in the new school township, under §§ 136, 138, Ch. 44, Laws 1883.

Appeal from District Court, Richland County; *Morgan,* J.

Action by William N. Coler and William N. Coler, Jr., partners under the firm name and style of W. N. Coler & Co., against Dwight School Township of Richland County, on the interest coupons of certain bonds. Judgment for plaintiffs. Defendant appeals.

Modified and affirmed.

*W. E. Purcell*, for appellant.

*McCumber & Bogart*, for respondent.

CORLISS, J. The plaintiffs have recovered judgment upon a number of coupons representing the interest on bonds issued by an alleged municipal corporation known as School District No. 22, in Richland County, in the then Territory of Dakota. Defendant, not having issued them is sought to be held liable on these bonds and their interest coupons, by virtue of Ch. 44, Laws 1883. At the threshold of the case we are met with the proposition that there is no liability because there was no such corporation as School District No. 22 in existence when these instruments were executed and delivered. It is asserted that the proceedings instituted to effect the organization of such a municipality were fatally defective. It is, in the first place, insisted that there was no petition for the erection of the district presented to and filed by the county superintendent of schools, signed by a majority of the citizens residing in the territory to be effected. Such a petition is required by the statute. Chapter 14, Laws 1879, § 10. The trial judge has found that there was such petition made, and that it was filed as required by law. This finding is challenged. We think that the evidence is sufficient to sustain it. The petition itself was not produced, but we are satisfied that there was ample evidence to warrant a finding by the trial judge that it could not be found, but had been lost or taken away by some former county superintendent, either the one with whom it was originally filed or by one of his successors. There was ample evidence to justify the trial court in holding that diligent search has been made for the paper. The court therefore properly admitted secondary evidence as to the signing and filing of the petition. This evidence sustains the finding.

It is next contended that there was a failure to comply with the provisions of the statute requiring the county superintendent to furnish the county commissioners of the county with a written

description of the boundaries of the district, and declaring that such description must be filed in the office of the register of deeds before such district should be entitled to proceed with its organization by the election of school district officers. Chapter 14, Laws 1879, § 10. It is undisputed that the only attempt to comply with this requirement was by filing a paper, which in words, figures, and form is as follows:

"On January 1st, 188  , the above named district comprised the following described lands, viz:

| Description | Sec. | Town | Range | Description | Sec. | Town | Range |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| For subsequent changes  see  opposite page. | | | | | | | |

"Plat of School District No. 22.

Township\_\_\_\_Range.\_\_\_\_Township 132, Range 49.

*Filed 24th October, 1881, at 11 a. m. Co. Clerk. J. M. Ruggles,*

| 6 | 5 | 4 | 3 | 2 | 1 | 6 | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | 8 | 9 | 10 | 11 | 12 | 7 | 8 | 9 | 10 | 11 | 12 |
| 18 | 17 | 16 | 15 | 14 | 13 | 18 | 17 | 16 | 15 | 14 | 13 |
| 19 | 20 | 21 | 22 | 23 | 24 | 19 | 20 | 21 | 22 | 23 | 24 |
| 30 | 29 | 28 | 27 | 26 | 25 | 30 | 29 | 28 | 27 | 26 | 25 |
| 31 | 32 | 33 | 34 | 35 | 36 | 31 | 32 | 33 | 34 | 35 | 36 |
| 6 | 5 | 4 | 3 | 2 | 1 | 6 | 5* | 4 | 3 | 2 | 1 |
| 7 | 8 | 9 | 10 | 11 | 12 | 7 | 8 | 9 | 10 | 11 | 12 |
| 18 | 17 | 16 | 15 | 14 | 13 | 18 | 17 | 16 | 15 | 14 | 13 |
| 19 | 20 | 21 | 22 | 23 | 24 | 19 | 20 | 21 | 22 | 23 | 24 |
| 30 | 29 | 28 | 27 | 26 | 25 | 30 | 29 | 28 | 27 | 26 | 25 |
| 31 | 32 | 33 | 34 | 35 | 36 | 31 | 32 | 33 | 34 | 35 | 36 |

Township\_\_\_\_Range\_\_\_\_    Township\_\_\_\_Range\_\_\_\_

"Organized October 24th, 1881, by J. H. Kennedy, Co. Supt. of Schools."

We are clear that this does not contain a written description of the boundaries of the district. It merely purports to be a plat of the district. Whether the district is within or without the lines of the plat is left to speculation. But does it necessarily follow that the organization of the district is thereby rendered void? The county superintendent creates the district. His decision, embodied in written form, is the act which calls the new corporation into being, provided he has been given authority to proceed by the presentation and filing of the proper petition. The statute requires him to keep a record of his official acts, (§ 12,) and it is to this record that the court must look to see if the

---

\* Not included.

district has been formed. The record so kept by the county superintendant shows the following entry: "District No. 22, organized October 24th, 1881, and includes the following described territory: South half of sections 19, 20, 21, 22, and 23, and all of sections 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35, in township 133, range 49, and one-half of section 5, in township 132, range 49, and sections 24, 25, and 36, township 133, range 50." The statute does not declare that furnishing the county commissioners with a written description of the boundaries, and the filing thereof in the office of the register of deeds, are conditions precedent to the existence of the district. Quite the contrary. The statute refers to the district as a corporation already formed before the doing of these acts. It does not withhold corporate life until the description is furnished and filed. It merely provides that the district shall not be entitled to proceed with its organization by the election of school officers before these acts are performed. The corporation exists; the district officers exist; but no election of officers can be held until after certain acts are performed. This is the plain reading of the statute. Said the court in *School Directors of Union School Dist. No. 4* v. *School Directors of New Union School Dist. No. 2*, (Ill. Sup.) 28 N. E. Rep. 49, at page 52: "And the failure of the township trustees to file with the county a map showing the lands embraced in the new district will not have the effect to destroy its corporate existence, or to prevent the directors of a new district from levying taxes for school purposes therein;" citing *School Directors of Dist. No. 5* v. *School Directors of Dist. No. 10*, 73 Ill. 250. A municipal corporation may have life, although there are no officers in office. No claim is made that the officers who in fact signed the bonds and coupons were not at least *de facto* officers of the district, provided there was a legal organization thereof. Nor could it be successfully contended that such officers were not at least *de facto* officers, there having been an attempt to comply with the law requiring the furnishing and filing of the description before officers should be elected, and the officers being in actual possession of their

respective offices and exercising the functions thereof, and there being no other persons pretending to lay claim to such offices. Nor would we reach a different conclusion were we of opinion that the organization of the district was so defective that the proceedings would be set aside on *certiorari* or the right of the district to act as such would be denied by judgment in *quo warranto*. At the time these bonds were issued the district was acting as a *de facto* district under at least color of organization. It had elected its district officers; held its district meetings; had voted to borrow money to build a school house; and it appears to be undisputed that the proceeds of these bonds were used for that purpose, and the inhabitants received the benefit thereof. A school house has been built, and school has been taught therein. To allow the defense that the proceedings in the organization were defective to defeat the debt represented by these bonds would, under these circumstances be to sanction repudiation of an honest obligation. We are firm in the opinion that the legality of the organization of a municipal corporation cannot be thus collaterally attacked. Citizens of the district who are opposed to the formation of such a corporation are not without remedy. *Certiorari* will reach the action of the county superintendent when without jurisdiction. *People* v. *Board of Sup'rs*, 41 Mich. 647, 2 N. W. Rep. 904. The statute allows an appeal. Section 25, Ch. 14, Laws 1879. The corporate existence may be attacked by *quo warranto*. *State* v. *Bradford*, 32 Vt. 50; *People* v. *Clark*, 70 N. Y. 518; *Cheshire* v. *Kelley*, (Ill. Sup.) 6 N. E. Rep. 486; Comp. Laws, § 5348, Subd. 3; *Territory* v. *Armstrong*, 6 Dak. 226, 50 N. W. Rep. 832. The evils resulting from a doctrine which would permit the legality of the organization of a municipal corporation to be inquired into collaterally—in an action to enforce a debt, in a proceeding to collect a tax levied by the *de facto* corporation, or in a litigation over a tax title growing out of a tax imposed by such municipality—would be as great as the evils which would flow from the collateral inquiry into the title of a person to an office, the functions of which he is in fact exercising. This same argument reaches the

objection that no sufficient petition was ever presented and filed, even assuming that the record sustained the claim this requirement of the statute was not complied with. It does not follow, because the organization was illegal for want of power in the county superintendent, that at all times, in every species of litigation, and by any person, the existence of the *de facto* district can be assailed. It is no more essential to the exercise by the county superintendent of this power that a petition should be filed than that it should be signed by a majority of the citizens residing in the district. It is the fact, and not the decision of the superintendent that the fact exists, which gives him jurisdiction. A petition is filed lacking the signature of one citizen to make it a petition signed by majority of the citizens; in all other respects the organization is regular; bonds are issued, a school house built, and school taught. Is all this to be ignored, to be treated as illegal, because there was no *de jure* district? Who are the real parties interested in defeating such a debt? The taxpayers within in the district. In what position are those to object who participated in the organization? They have attempted to form a district. They for a time believed that they had formed it. They elect officers; borrow money on bonds for district purposes; build a shool house therewith; and use the money for other purposes connected with the functions of the district. On what principle can the existence of the district be denied by them for their benefit? If any within the district refrained from affirmative action, still they are chargeable with passive acquiescene when they might have acted, and acted effectually, against the *de facto* existence of the district, and thus have prevented an imposition upon the innocent who were justified in taking that to be a legal district which was acting as such, and to all appearances was warranted in acting as such. Those who were silent, when in conscience they should have spoken, have no claim upon the equity of this court. They did not protest; they did not appeal; they did not resort to *certiorari*; they made no effort to have the district attorney overthrow this *de facto* district by *quo warranto*;

and when the bonds were voted for they appealed to no chancellor to protect their property from an illegal debt. Not only the considerations which lie at the foundation of the rule protecting the public in dealing with a *de facto* officer, but also a principle very analogous to that of equitable estoppel, protect these bondholders against repudiation under the forms of the law. If there cannot be a *de facto* school district, there cannot be a *de facto* city. If illegality in the proceedings to effect organization is fatal to the existence of a district, it is equally as fatal to the existence of a municipal corporation of a higher grade. Given a case where the defects in the incorporation of the city are as fatal as in this case, and then deny to that corporation any effect, although a city government is in fact inaugurated and carried on, and the consequences would be intolerable. Open and acknowledged anarchy would for some reasons be preferable. In after years tax titles would be destroyed; every officer of the city would be a trespasser when the discharge of what would be his duty on the theory of the existence of the corporation led to an interference with the property or person of others. Every police or other peace officer and every magistrate acting under the supposed authority of the city government would be liable for extortion, for assault and battery, for false imprisonment, and could be prosecuted criminally for acts done in good faith in the enforcement of the criminal law. An army of creditors whose savings have gone into the city treasury, and through the treasury into public buildings and other public improvements, find, to their astonishment and dismay, that they have received in exchange beautifully lithographed but worthless bonds as souvenirs of their abused confidence. All that has been done in good faith under color of law is only barefaced usurpation, and to be treated as such for all purposes. Such a doctrine would be the author of confusion, injustice, and almost endless litigation. The imagination cannot embrace all the gross wrong to which it would lead when pushed, as it must be, to its logical consequences. On the other hand, no great injury can result to the citizens or state by

recognizing a *de facto* corporation; one acting as such under color of organization. If the law is disregarded in the attempt to organize the municipality, the violation of, law always can be nipped in the bud by appropriate judicial proceedings. We find that our views are by no means novel. The rule that the existence of a *de facto* municipal corporation cannot be collaterally assailed has frequently been recognized and applied by the courts. *Stuart* v. *School Dist.*, 30 Mich. 69; *People* v. *Maynard*, 15 Mich. 470; *Krutz* v. *Town Co.*, 20 Kan. 397; *Tisdale* v. *Town of Minonk*, 46 Ill. 9; *Geneva* v. *Cole*, 61 Ill. 397; *People* v. *Farnham*, 35 Ill. 562; *Jameson* v. *People*, 16 Ill. 257; *Sherry* v. *Gilmore*, (Wis.) 17 N. W. Rep. 252; *State* v. *Railroad Co.*, (Nev.) 25 Pac. Rep. 296; *School Dist. No. 2* v. *School Dist. No. 1*, (Kan.) 26 Pac. Rep. 43; *Railroad Co.* v. *Wilson*, (Kan.) 6 Pac. Rep. 281; *Clement* v. *Everest*, 29 Mich. 19; *Stockle* v. *Silsbee*, 41 Mich. 615, 2 N. W. Rep. 900; *Burt* v. *Railroad Co.*, 31 Minn. 472, 18 N. W. Rep. 285, 289; *Mendenhall* v. *Burton*, (Kan.) 22 Pac. Rep. 558; *School Directors of Union School Dist. No. 4* v. *School Directors of New Union School Dist. No. 2*, (Ill. Sup.) 28 N. E. Rep. 49; 15 Am. and Eng. Enc. Law, 965; 1 Dill. Mun. Corp. § 43; *President, etc.*, v. *Thompson*, 20 Ill. 197; *Town of Enterprise* v. *State*, (Fla.) 10 South. Rep. 740. See 2 Dill. Mun. Corp. § 894; *State* v. *Weatherby*, 45 Mo. 17; *Board* v. *Lewis*, 10 Sup. Ct. Rep. 286; *Austrian* v. *Guy*, 21 Fed. Rep. 500. In some of the cases time seems to have been considered an element of some importance, but the public may as effectually be deceived by a *de facto* organization the day after it is complete as a decade thereafter. The time a *de facto* officer has been in possession of an office is never regarded as controlling. He is as much an officer, as to the public, the day after he intrudes into the office as a year later. "The same rule which recognizes the rights of officers *de facto*, recognizes corporations *de facto*, and this is necessary for public and private security." *Clement* v. *Everest*, 29 Mich. 19, 23.

We have treated this power as if the action were upon the bonds themselves, because the holders of interest coupons may

recover if they could maintain an action on the bonds under the same circumstances. It is also urged that there was a failure to comply with certain conditions precedent to the valid exercise of the power conferred upon such districts by law to borrow money on district bonds. The statute regulating the issuing of such bonds provides, in substance, that they can be issued only when a majority of the electors of the district present and voting at a district meeting shall vote to issue the same. Chapter 24, Laws 1881, § 1. Section 2 of this act provides: "Before the question of issuing bonds shall be submitted to a vote of the district, notices shall be posted in at least three public and conspicuous places in said district, stating the time and place of meeting, the amount of bonds that will be required to be issued, and the time in which they shall be made payable, at least twenty days before the time of meeting; and the voting shall be done by means of written or printed ballots, and all ballots deposited in favor of issuing bonds shall have thereon the words 'for issuing bonds,' and those opposed thereto shall have thereon the words 'against issuing bonds;' and if the majority of all the votes cast shall be in favor of issuing bonds, the school board, or other proper officers, shall forthwith proceed to issue bonds in accordance with the vote; but if a majority of all the votes cast are opposed to issuing bonds, then no further action can be had, and the question shall not be again submitted to vote for one year thereafter; provided, however, that the question of issuing bonds shall not be submitted to a vote of the district, and no meeting shall be called for that purpose, until the district school board shall have been so petitioned, in writing, by a majority of the resident electors of said school district." It is contended that the school board was not petitioned to submit the question of issuing the bonds to a vote as required by the proviso to § 2. We think the defendant is not in position to raise this point. The plaintiffs are bona fide holders of the coupons. The recital in the bonds is therefore fatal to this defense. Upon their face appears the following statement: "This bond is issued on the 24th day of June, 1882,

by School District No. 22, County of Richland, D. T., for building and furnishing a school house, under and in pursuance of, and in strict conformity with, the provisions of an act of the legislative assembly of the Territory of Dakota, entitled 'An act to empower school districts to issue bonds for building school houses,' approved March 3rd, 1881, and of a vote of said district at a special meeting had on the 29th day of November, 1881." Upon the back of each bond is the following certificate signed by the clerk of the district: "I certify that the within bond is issued in accordance with a vote of School District No. 22, of Richland County, Dakota Territory at a special meeting held on the 29th day of November, A. D. 1881, to issue bonds to the amount of twelve hundred dollars." It is obvious from the statute that the officers by whom the bonds are to be issued are intrusted with duty of determining whether the statute has been complied with as to all matters necessary to give them authority to issue the bonds. Their statement embodied in these bonds therefore estops the district and its successors from showing aught to the contrary. The rule and the reason for it have been so often shown, and are so well known to the profession, that it will suffice to cite some of the numerous authorities on the point. *Inhabitants* v. *Morrison,* 133 U. S. 523, 10 Sup. Ct. Rep. 333; *Oregon* v. *Jennings,* 119 U. S. 74–92, 7 Sup. Ct. Rep. 124; *County of Moultrie* v. *Rockingham, etc., Bank,* 92 U. S. 631; *Venice* v. *Murdock,* Id. 494; *Town of Colona* v. *Eaves,* Id. 484; *Dixon County* v. *Field,* 111 U. S. 83, 4 Sup. Ct. Rep. 315; *Humboldt Tp.* v. *Long,* 92 U. S. 642; *Commissioners of Knox Co.* v. *Aspinwall,* 21 How. 539; *Fulton* v. *Town of Riverton,* (Minn.) 44 N. W. Rep. 257; 15 Am. and Eng. Enc. Law, 1295 *et seq.*; Burr. Pub. Secur. 299 *et seq.* It is not necessary that the power to determine these facts should have been expressly conferred upon the district officers by the statute. "It is enough that full control in the matter is given to the officers named." *Inhabitants* v. *Morrison,* 133 U. S. 523, 10 Sup. Ct. Rep. 333; *Fulton* v. *Town of Riverton,* (Minn.) 44 N. W. Rep. 257. For is it essential that the statement should set forth

in detail that all of the various conditions precedent have been complied with. It is sufficient if it is stated that the bond was issued in pursuance of the statute, designating it in such a manner as to identify it. This is in legal effect a statement that each and all of the necessary preliminary steps were taken to authorize the issue of the bonds. *Inhabitants* v. *Morrison*, 133 U. S. 523, 10 Sup. Ct. Rep. 333; *Dixon Co.* v. *Field*, 111 U. S. 83, 4 Sup. Ct. Rep. 315; 15 Am. and Eng. Enc. Law, 1300; *County of Moultrie* v. *Rockingham, etc., Bank*, 92 U. S. 631. But the statement went much further. It asserted that the bonds had been issued under and in pursuance of, and in strict conformity with, the act authorizing their issue, "and of a vote of said district at a special meeting had on the 29th day of November, 1881." The certificate indorsed on the bonds by the clerk was required by the statute to be indorsed thereon. Chapter 24, Laws 1881, § 4. The statute specifies what the certificate shall contain, and this provision was strictly complied with in the issuing of these bonds. This requirement indicates that it was for the protection of the purchaser of the bonds, who might implicity rely upon the clerk's certificate as conclusive evidence that all necessary preliminary steps had been legally and regularly taken.

We come now to the claim that the plaintiffs have sued the wrong corporation. The defendant did not issue these bonds. If liable at all, it must be by virtue of some statute. Chapter 44, Laws 1883, is pointed to as the act which binds the defendant to pay these bonds. This law provides for a new system. The district school system was to be abolished, and the township school system to take its place. Under this statute it was the duty of the board of county commissioners to divide all organized counties into school townships. The finding of the court is that on May 23rd, 1883, the commissioners of Richland County duly organized the school township of Dwight in that county, and that the territory within this new school township embraced nearly all of the territory of the old school district No. 22; and that the school house and school furniture belonging to the district were

received into and are owned by the defendant.    There is sufficient evidence to support the finding that the school house belonging to district No. 22 is within the territorial limits of the defendant. Under these facts the liability of the defendant on these bonds would be clear, under § 144 of the act, were it not for the provisions of § 136, to which we will in a moment refer.  Section 144 provides as follows:  "Every school township shall be liable for, and shall assume and pay fully, according to their legal tenor, effect, and obligation, all the outstanding bonds and the interest thereon, of every school district, the school house and furniture of which are received and included within the school township, and owned thereby, the same as if said bonds had been issued by said school township; and the law which authorized the school district to issue bonds shall apply to the school township the same as if it had originally been authorized to issue, and had issued, the said bonds.  The bonds shall be deemed in law the bonds of the school township, with the same validity for securing and enforcing the payment of principal and interest that they would have had against the district that issued them."   There can be no question as to the power of the legislature to impose upon a new municipality, which includes all or a portion of the territory of an old municipal corporation, liability for the debts of the old corporation, where the property of the latter is turned over to and received by the former under the law.  *Mt. Pleasant* v. *Beckwith*, 100 U. S. 514; 1 Dill. Muni Corp. § 63; *State* v. *City of Lake City*, 25 Minn. 404; *City of Winona* v. *School Dist. No. 82*, 40 Minn. 13, 41 N. W. Rep. 539; *Demattos* v. *City of New Whatcom*, (Wash.) 29 Pac. Rep. 933; *Laramie County* v. *Albany County*, 92 U. S. 307; *Schriber* v. *Town of Langlade*, (Wis.) 29 N. W. Rep. 547, and cases cited in opinion; *Knight* v. *Town of Ashland*, (Wis.) 21 N. W. Rep. 65–70.  See, also, note to *State* v. *Clevenger*, [Neb., 43 N. W. Rep. 243,] in 20 Am. St. Rep. 677.  Indeed, many of the cases go much further that is necessary to support this legislation.   But it is contended that School District No. 22 has not ceased to exist; that the organization of the defendant is not

complete; and the argument from these premises is that District No. 22, and not the defendant, is at present liable for these bonds. The section of the statute on which the claim rests is § 136. It provides as follows: "The adoption of the system herein provided, and the passage and approval of this act, shall not have the effect to discontinue, abolish, and render null such school districts or their organization as they may now exist in any county, but they shall continue to exist, and their officers to act as such, in law and fact, until the school township organization is complete, so far as it includes any particular district or districts, or the larger part of any particular district. And such township organization shall not be deemed complete, nor such districts so cease to exist, and their officers to act as such, until all matters between the district and the township are adjusted, and the property delivered, funds paid over, and an adjustment is reached for the equalization of taxes and property between the districts which enter into the school township, so far as such taxes and property remain permanent in houses, sites, furniture, and other parts of houses and grounds." The next two sections prescribe the procedure by which the equalization of taxes is to be determined, and the rules which are to govern such equalization. Now, it is quite clear to our mind that § 136 was incorporated in the statute merely to keep the old districts alive, for the purpose of adjusting their rights among themselves, so that taxpayers living in each portion of the new township which formerly constituted a school district should not pay more of the aggregate of the old indebtedness of the several districts embraced in the township than would be equitable, considering the rights of the taxpayers of the other districts, so included, to the same treatment. The school boards of the several old districts constituted, with the county superintendent, a body to adjust these matters, and it was necessary to keep the districts alive for this special purpose after the organization of the township. The legislature intended to work an immediate, radical revolution in the school system for the whole territory. We do not believe that they contemplated that, while

a long drawn out contest was going on to settle these questions between the old districts, this new system should be held in abeyance. Moreover, there would be no reason for making the organization of the school township, and its right to carry on the school system, depend upon the determination of a matter, the prior settlement of which was not essential to the corporate existence of the school township and the administration of the school law. Settlement must inevitably come. Should those charged with the duty of making it fail to obey the law, mandamus would set them in motion. The nature of their decision could not be dictated by any court; but they could be compelled to make some decision. The discharge of this duty, whether voluntary or under compulsion, can as well go on after as before the school township becomes liable for the district debts and is authorized to carry on the schools. The township is by the statute made liable for these bonds. It is the formal party against which judgment may be recovered. When execution in the form of mandamus to compel a levy of taxes is applied for, the court will observe the decision of the board of adjustment in the apportionment of the burden. If no settlement has at that time been voluntarily reached, the court in a separate proceeding will compel the performance of this duty specially enjoined by law, and when such adjustment is consummated the writ of mandamus to compel the levy of a tax to pay the judgment must observe and follow this adjustment in the apportioning of the tax among the several old districts of the new township. The statute is not clear. The question is by no means free from doubts. If the eye is riveted on § 136 alone there is much force in the defendant's position. But we must scan the whole act to find out its spirit, and in the light of that spirit we must interpret § 136. We can discover a good reason for keeping these districts alive, after the organization of the school township, for the special purpose of adjustment of equities. We believe it would be highly inconvenient to preserve their existence thereafter for general school purposes, and that such was not the intention of the law making

power.   The existence of these districts for this particular pur-
pose is not incompatible with the existence of the school town-
ship.   It in no manner interferes with the full exercise by the
school township of all its powers.   These districts were to be
kept alive for a short period, to accomplish a special object
entirely foreign to the power conferred upon school townships.
Their utter extinction for all purposes contemporaneously with
the creation of school townships would have left the latter no
more completely in possession of all their functions as municipal
corporations.   Finding no error, the judgment is affirmed.   All
concur.

ON REHEARING.

(May 31st, 1893.)

We are asked to grant a rehearing on the assumption that we
have overlooked the case of *Dartmouth Sav. Bank* v. *School Dists.*
Nos. 6 and 31, 6 Dak. 332, 43 N. W. Rep. 822.   We had not over-
looked it.   We do not regard it as in point.   In that case it might
be said that their was no color of organization. There was no peti-
tion ever filed, or even signed.   In so far as that decision can be
regarded as conflicting with our conclusions we feel constrained
to differ from the court which pronounced it.

Another matter is referred to in the petition for rehearing
which strikes us with much force.   It is insisted that, unless we
modify the judgment, it will stand as an unqualified judgment
against the defendant, to be collected the same as any other
judgment against it.   To save any question, we will modify the
judgment so that the collection of it must be enforced according
to the provisions of § § 136, 141, Ch. 44, Laws 1883.   The District
Court will modify the judgment by inserting therein the follow-
ing clause:   This judgment is to be enforced subject to the pro-
visions of § § 136, 141, Ch. 44, Laws 1883; the debt on which it is
rendered being a debt subject to equalization as therein provided.

Modified and affirmed.   All concur.