ARETAS SHURTLEFF *vs*. INHABITANTS OF WISCASSET.

Cumberland. Opinion September 19, 1882.

*Municipal bonds. Constitutional law. Private and special laws of 1864, chapter 370; 1871, chapter 511; 1872, chapter 1. Practice.*

In a suit upon interest coupons cut from a municipal bond containing this recital: "In testimony whereof, we, the chairman of selectmen and treasurer of the town of Wiscasset, 'in behalf of said town, and in conformity with the act of the legislature of the state of Maine, approved March twenty-first, 1864, vesting in us authority to issue this bond for the benefit of the Knox and Lincoln Railroad Company have hereunto set our hands," and of interest coupons cut from other bonds containing the same recital excepting as to the date of the approval of the legislative act. *Held*, that the defendants are estopped by the recitals in the bonds from objections to their validity on the ground that there was no legal organization of the railroad company and no company authorized to receive the bonds and give a mortgage for them under private and special laws, 1864, c. 370, § 5; or because the certificate of the railroad company does not show that the required amount had actually been subscribed, paid in, and expended in the construction of the road; or because the treasurer's certificate was not sworn to until after the date of the bonds, and was not recorded until nearly two months after; or because the required amount of subscription and ex-

penditure was largely made up of the subscriptions of the cities and towns to whom the mortgage was given; or because some of them issued no bonds and so the condition of the vote of the defendant town was not complied with; or because the vote of the town was not passed at an annual meeting;—as to these and all objections that the legislative authority given to the town was not regularly exercised, or that any condition precedent to the issue of the bonds was not complied with, the defendants are precluded from asserting them by the familiar doctrines of equitable estoppel.

Private and special laws, 1871, c. 511, and 1872, c. 1, making valid votes of certain towns, are constitutional, and bonds issued in pursuance of them are valid.

The proposition that our statutes now provide no process by which a judgment rendered against a town can be legally enforced, if it were established, would constitute no reason why such judgment should not be rendered if the plaintiff is otherwise entitled to it.

*Augusta Bank* v. *Augusta,* 49 Maine, 507, confirmed.

ON REPORT from the superior court.

Assumpsit upon six coupons amounting in all to fifty-seven dollars, cut from certain bonds issued by the town of Wiscasset. The writ was dated March 26, 1880. The plea was the general issue and brief statement setting up the different defences indicated in the opinion.

The following are copies of bonds from which the coupons in suit were cut:

(Bond.)

| Number. | United States of America. | Dollars. |
|---------|:-------------------------:|---------:|
| 7. | State of Maine. | 1,000. |

Town of Wiscasset.

Be it known that the town of Wiscasset will pay in the city of Boston to the holder of this bond, the sum of one thousand dollars in thirty years from the date hereof, and will also pay at the same place the semi-annual coupons hereto attached. Value received.

$1,000.

In testimony whereof, we, the chairman of selectmen and treasurer of the town of Wiscasset in behalf of said town, and in conformity with act of the legislature of the state of Maine, approved January tenth, 1872, vesting in us authority to issue

this bond for the benefit of the Knox and Lincon railroad company,
have hereunto set our hands.                                    Revenue
Dated at Wiscasset, this first day of February, 1872.     Stamp.

Wm. P. Lennox,                         Benj. F. Gibbs,
    treasurer.                          chairman of selectmen.
      Countersigned, Oliver Moses, president.

(Bond.)

| Number. | United States of America. | Dollars. |
|---|---|---|
| 30. | State of Maine. | 500. |
| | Town of Wiscasset. | |

Be it known that the town of Wiscasset will pay in the city of
Boston to the holder of this bond, the sum of five hundred dollars
in twenty-five years from the date hereof, and will also pay at
the same place the semi-annual coupons hereto attached.
Value received.

Five hundred dollars.

In testimony whereof, we, the chairman of selectmen and
treasurer of the town of Wiscasset in behalf of said town, and in
conformity with the act of the legislature of the state of Maine,
approved March twenty-first, 1864, vesting in us authority to
issue this bond for the benefit of the Knox and Lincoln railroad
company, have hereunto set our hands.                         Revenue
Dated at said Wiscasset, this first day of                      stamp.
      July, A. D. 1869.

Wm. P. Lennox,                         Joseph Tucker,
    treasurer.                          chairman of selectmen.
      Countersigned, Oliver Moses, president.

(Bond.)

| Number. | United States of America. | Dollars. |
|---|---|---|
| 31 | State of Maine. | 100 |
| | Town of Wiscasset. | |

Be it known that the town of Wiscasset will pay in the city of
Boston to the holder of this bond, the sum of one hundred

dollars, in twenty years from the date hereof, and will also pay at the same place the semi-annual coupons hereto attached. Value received.

One hundred dollars.

In testimony whereof, we, the chairman of selectmen and treasurer of the town of Wiscasset, in behalf of said town, and in conformity with an act of the legislature of the state of Maine, approved January ninth, 1871, vesting in us authority to issue this bond for the benefit of the Knox and Lincoln railroad company, have hereunto set our hands.                    Revenue

Dated at said Wiscasset, this first day of                    stamp.
        March, A. D. 1871.

Wm. P. Lennox,                         Joseph Tucker,
        `treasurer.                    chairman of selectmen.

Countersigned, Oliver Moses, president.

Other material facts stated in the opinion. The law court was to render such judgment as the legal rights of the parties required.

*Webb and Haskell*, for the plaintiff, cited: *Allen* v. *Archer*, 49 Maine, 346; *Winchester* v. *Corinna*, 55 Maine, 9; *Lane* v. *Embden*, 72 Maine, 354; *Merriwether* v. *Garrett*, 102 Otto, 519.

*Henry Ingalls* and *Strout and Holmes*, for the defendants, contended that the bonds from which the coupons in suit were cut were not valid obligations of the defendants for several reasons. as stated in the opinion.

Upon the question of the authority of the legislature to ratify and make valid the votes of the town by which the second and third issues of the bonds were issued the counsel argued:

It is true, that during the struggle for the preservation of the government, many acts and things were done, permitted and ratified, which, under ordinary circumstances, would not have been allowed. The question of the constitutionality of the various acts of ratification for the purpose aforesaid, has not been raised, except in the case of *Winchester* v. *Inhabitants of Corinna*, 55 Maine, 9. Although the ratification in that case was

sustained, the decision was placed upon grounds, which render it an authority against the ratification of the vote in question. In that case, the court say : "It is unnecessary for us to consider the exact limit of this power to ratify and make valid the proceedings of corporations or individuals by subsequent legislation. We cannot doubt that where, as in this case, the action of the town was in relation entirely to public matters of high national concern, and did not in any way touch or affect vested rights or private interests, as distinct from public exigencies, the legislature might ratify and make valid whatever it might constitutionally authorize before action. The votes in question were, in their nature, of a political character, and not personal or affecting individual rights of property. The great objection in most of the cases is, that the rights of individuals in distinction from their citizenship or their relations to the whole community, are injuriously affected. No such objection exists in the case before us."

"The fact that one step of doubtful propriety has been taken is never a good reason for taking another in the same direction; but rather, on the contrary, induces us to pause and revert to fixed principles." Justice BARROWS, 58 Maine, 612.

The true doctrine of the constitutional power of ratification is laid down in *Allen* v. *Archer*, 49 Maine, 346. It is there said that "statutes, made to confirm acts by public officers, which would have been void for some informality, have never been questioned on constitutional grounds ;" that "laws of this character, which are intended only to cure informalities and technical defects, and which do not interfere with vested rights, nor impair the obligation of contracts, are justly deemed statutes of repose."

A wide, and in this case vital distinction, exists between the validity of a healing statute, which is intended to cure informalities and defects in the execution of acts for which there is legal authority, and a statute which undertakes to authorize that which was done without law, and against the provisions of existing statutes. This distinction is recognized in the case of *Allen* v. *Archer*, above cited, and especially in the case of *Town of South Ottawa*, v. *Perkins*, 4 Otto, 270. In the case at bar, the

votes were without the authority of law and absolutely void. The citizens of the town of Wiscasset might well say, "we will not attend this unauthorized meeting." And as matter of fact, they did not attend it. Can the legislature afterwards say that the void act of a minority of the voters of the town shall bind the majority and impose burdens upon their property? The building of a railroad, by which private rights are affected, and to be paid for by taxation *in invitum* of individuals, can only be justified on the ground that such roads are for the public use. *State* v. *Noyes*, 47 Maine, 204; *Railroad Commissioners* v. *P. and O. R. R.* 63 Maine, 275.

No case like the one at bar has been before the court in this state. Here the question is new, but it is not so in other states. See *Marshall* v. *Silliman*, 61 Ill. 218; *Barnes* v. *Lacon*, 84 Ill. 461; *Ryan* v. *Lynch*, 68 Ill. 160; *Supervisors* v. *Schenck*, 5 Wal. 781; *Marsh* v. *Fulton County*, 10 Wal. 684.

Counsel further elaborately argued against the constitutionality of the statutes in relation to the enforcement of executions issued upon judgments against towns and contended that as there was no way of enforcing such a judgment, one could not be rendered.

BARROWS, J. A portion of the elaborate argument of defendants' counsel is devoted to an attempt to show that the authority given by the legislature to the inhabitants of Wiscasset to aid in the construction of a railroad running through that town, from which great public benefits were expected to flow, was not regularly exercised, or that this or that condition precedent to the issue of the bonds was not fulfilled: *e. g.*—the objection raised to the validity of the bonds of the first issue on the ground that there was no legal organization of the Knox and Lincoln railroad company, and no company authorized to receive the bonds or give a mortgage for them under § 5, c. 370, private and special laws of 1864, because in the original charter granted in 1849, private and special laws, c. 287, of the Penobscot, Lincoln and Kennebec railroad company (whose name was changed to Knox and Lincoln in the act of 1864) the capital stock was fixed at a million dollars and the case does not show that more than $370,000

had been subscribed ; the objections that the certificate of the treasurer of the railroad company does not show that, at the time the bonds were delivered to the railroad company "at least $300,000 of the stock of the company had actually been subscribed, paid in and expended in the construction of the road," but only that "$334,528.25 had been collected from the subscribers to the stock" and "paid out in the construction of the road, bridges, timber, logs, &c. of said company ;" that said treasurer's certificate does not appear to have been sworn to until twelve, days after the date of the bonds and was not recorded until nearly two months after ; and that of the $370,000 subscription $275,000 was subscribed by the same cities and town to whom the mortgage was to be given, so that the subscription was rather an evasion than a compliance with the act, which required that "said bonds shall not be delivered to said railroad company until at least three hundred thousand dollars of the stock of said company has actually been subscribed, paid in and expended in the construction of said road, which fact shall be determined by the certificate of the treasurer of said corporation under oath, a copy of which certificate shall be recorded by the town or city clerk of each town or city issuing bonds by authority of this act."

Now touching these and all objections of like character, — aside from reasons which will readily suggest themselves to show that upon the obvious facts there is small merit in most of the objections individually, — it is sufficient to say that a broad distinction has long been recognized and adhered to by the courts, in suits of this description, between contracts which are void for want of any valid authority in the corporation to make them, and those where the authority exists and the question raised is whether it has been regularly exercised, or the conditions precedent to its exercise have been fulfilled. Touching all objections of the latter class it is well settled that purchasers of securities thus put out to the public for sale, "will not be required to look beyond the face of the proceedings or the recitals of the instruments under which they claim ;" and the corporations issuing them will be estopped to deny what their agents in the premises

have affirmed in order to place their securities on the market. *Aspinwall* v. *Com'rs of Knox Co.* 21 Howard, 539 ; *Zabriskie* v. *R. R. Co.* 23 Howard, 400 ; *Augusta Bank* v. *Augusta*, 49 Maine, 507 ; *Deming* v. *Houlton*, 64 Maine, 254, and cases there cited ; *Lane* v. *Embden*, 72 Maine, 354, and cases there cited.

These decisions stand on the firm ground of equitable estoppel which has been recognized in the common law courts for centuries, and has its foundation in the immutable principles of natural justice. The bonds were signed as required by § 8 of the act, countersigned by the president of the railroad company, and the defendants through their municipal officers certified upon the face of each bond that their action was "in behalf of said town and in conformity with an act of the legislature of the state of Maine, approved March 21, 1864, vesting in us authority to issue this bond for the benefit of the Knox and Lincoln railroad company." Such recitals are conclusive against the defendants upon all that class of objections to which we have referred.

Another part of defendants' argument attacks the authority by which the second and third issues of bonds were made because the action of the town was in anticipation of the grant of authority from the legislature, and by the terms of the votes in each case the municipal officers of the town were directed to deliver the bonds to the officials of the railroad company "as soon as practicable after this vote shall be legalized by an act of the legislature of this state."

Hereupon it is strenuously contended by the defendants that the legislature had no power to do what they undertook to do by virtue of c. 511, private and special laws of Maine, 1871, and c. 1, private and special laws of 1872, which distinctly purport to ratify, confirm and make valid the acts and doings of the town of Wiscasset on October 15, 1870, and June 28, 1871, respectively, as well as the acts and doings of other towns and cities, respecting aid to the construction of the Knox and Lincoln railroad on the days and times mentioned in said acts, and to give authority to this and the other towns and cities named therein, to issue bonds in pursuance of the votes passed at their respective meetings specified in the acts. The passage of legis-

lative acts designed to impart validity to the doings of various municipal and other quasi corporations when they have not been in conformity with law and therefore are in fact without legal authority and without effect, is no new thing.

If marriages not celebrated according to the requirements of law or by those having authority to perform such a ceremony can be made valid, or sales of lands defectively made or acknowledged and in the absence of legislative ratification ineffectual, can be made effective to pass the title to real estate, there would seem to be little doubt that the legislature might confer the authority to issue these bonds which the town proposed and voted to issue when the necessary legislative authority could be obtained.

It is not an open question in this state whether the legislature is violating the constitution in authorizing by special act certain cities and towns to grant aid in the construction and equipment of railroads. It was determined in *Augusta Bank* v. *Augusta*, 49 Maine, 507, that such enactments were constitutional.

No good reason is perceived for holding that the legislature are precluded from authorizing a particular measure of this description which has assumed the shape of a definite proposition, when they can grant authority to do the same act in general terms without any knowledge of the precise nature of the action which may follow such grant of authority. Obviously there can be no better opportunity for the legislature to judge whether a measure will be conducive to the public welfare than when its precise terms are laid before them. If the question is whether an authority shall be granted it certainly tends to an intelligent decision to have it known precisely what use is to be made of it when granted. The sanction of the legislature is given to the particular transaction.

It cannot properly be said that the action of the town was without law or against law. It was the adoption of a vote at a legal meeting of the citizens under an article, clearly setting forth the business to be considered, which vote, by its terms, was to be operative only when legislative authority for it had been given. The vote and the authority under which it was given

took effect together. The principal practical argument against its propriety, is that the inhabitants of the town with the knowledge that they are presumed to have had of the want of legal authority (at the time of the meeting,) for a vote involving so large a sum may have absented themselves with the idea that no such vote could ever have any binding effect.

The argument does not commend itself as having any genuine force. If any ten taxable inhabitants of the town had questioned the legal right and power of the town to pledge its credit by these votes, there was a ready way to test it under c. 239, laws of 1864, § 1, but no such question seems to have been raised until evoked by the exigencies of this defence. The idea that any considerable number of voters absented themselves from the meeting from a doubt of the legality of its proposed action seems to be effectually rebutted.

Even where as in this instance, the objection is, that the action of the town was essentially void for want of any power to act in the premises whatever, and so cannot be ratified by subsequent legislative action, nor as a general rule made binding by the aid of the doctrine of estoppel it has been held that an estoppel may grow out of a long continued acquiescence in or enjoyment of the fruits of the contract. See note to *Doe* v. *Oliver*, in Smith's Leading Cases, 6th Am. Ed. vol. 2 p. 417, citing *Garrett* v. *VanHorne*, 7 Ohio, N. S. 327; *Goshen Township* v. *Shoemaker*, 12 *Id*. 624.

But we think there is no occasion to resort to the doctrine of estoppel touching this point. The legislative grant of authority was complete before the bonds were issued, and before, by the terms of the vote, they could be issued, and this issue, authorized by the legislature, perfected the liability which the plaintiff seeks to enforce, being an act on the part of the defendants, without which the liability could not have existed nor the money which the plaintiff and others invested in these bonds have been procured. Moreover, if the vote had been made without being conditioned as it was upon the procurement of legislative authority by its very terms, there are authorities which cannot be distinguished in principle from this case which hold that the subsequent

grant of powers from the legislature implied in a ratification of the doings of the town is equivalent to original authority. *Winchester* v. *Corinna*, 55 Maine, 9, where a vote expressly forbidden by an existing statute was confirmed by a subsequent legislature and declared valid by the court. Obviously there is no greater danger that an ill considered or unwise act will be thus ratified, than there is that authority should be given to do it before its precise scope and character have been declared and canvassed. If any wisdom comes with an early afterthought, both town and legislature will have had opportunity to profit by it. Every argument which a minority of the town may have to urge against the act can be deliberately presented to the legislature in a shape more likely to be effective than where the question for the legislature is touching the grant of a general power, and the way is still open for the town to reconsider their vote if they desire to do so, before the money of innocent third parties has been procured upon the strength of it.

No good reason is perceived why the maxim, *omnis ratihabitio mandato priori æquiparatur*, should not apply to an act of this description. The legislative act is after all only a grant of authority, *nunc pro tunc*,—a permission to the town to enter into the contract if they do not choose to reconsider their former action, and none the less valid because it was known to the legislature what the contract proposed was.

The objections against the second and third issues of bonds that Warren and Woolwich issued no bonds and so the condition in the vote of the town of Wiscasset was not complied with, and the objection against the third issue that the vote for it was not passed at an annual meeting of the town, both fall within that class as to which the defendants are estopped by the recitals in the bonds.

The issue here presented is whether the defendants made a binding promise to pay the plaintiff the amount of these coupons. The final proposition presented in defence is that if the plaintiff has judgment our statutes now provide no process by which it can be legally enforced. It is hardly necessary to say that if the proposition were established it would constitute no reason

why the issue here presented should not be adjudged in favor of the plaintiff. *Lyon* v. *City of Elizabeth*, New Jersey Supreme Court Abstract, Albany Law Journal, Sept. 10, 1881, vol. 24, p. 216, and cases there cited.

Certain decisions of the Supreme Court of the United States, especially, *Rees* v. *Watertown*, 19 Wallace, 122 ; and *Merriwether* v. *Garrett*, 102 U. S. 472, are relied on as establishing the doctrine that private property and especially that of non-residents, cannot be legally seized on execution, for the purpose of satisfying any judgment which the plaintiff may obtain here, in the manner prescribed by our existing statutes because such seizure would be in violation of the constitution of the United States, which declares that no man shall be deprived of his property without due process of law, and because the constitution of this state also forbids the taking of private property for public uses without just compensation, and permits it in cases of public exigency only. If the plaintiff does any illegal acts in attempting to enforce his judgment, it will be the pertinent subject of inquiry in some future suit what the duties, rights, and liabilities of parties owning property in one of our towns, and those of the creditors of such corporation who hold a judgment against it, respectively are. Interesting as the discussion of this topic might prove, we think it cannot properly find a place here. If the plaintiff has shown himself entitled to judgment against the defendants in this action, it is not a valid reason for withholding it that he may not be able to get it legally satisfied.

The defendants have shown no good defence to the *prima facie* case of the plaintiff. No sound legal reason appears why they should not pay the bonds they issued. The coupons stand or fall with the bonds.

> *Judgment for plaintiff for $57*
> *and interest from date of writ.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and SYMONDS, JJ., concurred.