## STONE v. CROW.

1. Section 5292, Comp. Laws, provides that depositions shall be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and by him addressed and transmitted to the clerk of the court. *Held,* that when this is done, and it is received by the clerk the court in which it is to be used, and the date of its reception has been placed upon it by him, it makes a proper filing of such deposition.
2. A jury is, from the very nature of its functions, the rightful and legitimate branch of the court to determine the facts in a case submitted to it. It is the most competent to test the credibility which is to be attached to the witnesses, and to weigh their evidence, and it must be a glaring and palpable case of injustice which will induce an appellate court to interfere and disturb the finding of a jury.
3. When there is no evidence, or when the verdict is wholly unsupported by evidence, the court should interfere, and grant a new trial in furtherance of the ends of justice. The evidence has been examined, and this is found to be such a case.

(Syllabus by the Court. Opinion filed February 24, 1892.)

Appeal from circuit court, Lawrence county. Hon. CHAS. M. THOMAS, Judge.

Action on a promissory note by endorsee against maker. The defendant answering alleged that the note was not transferred to plaintiff for value before maturity, and set up counter claim against the original payee. Judgment for defendant. Plaintiff appeals. Reversed.

The facts are fully stated in the opinion.

*Martin & Mason* for appellant.

A deposition intended to be read in evidence on the trial must be filed at least one day before the trial. §§ 5292 and 5297, Comp. Laws.

The endorsement of a negotiable instrument is presumed to have been made for value before maturity, and in the ordinary course of business. § 4470, Comp. Laws; 1 Dan. Nego. Inst., §§ 769, 812, 819, 1503. The court will grant a new trial if it thinks the verdict does not accord with the preponderance of the evidence. Wilson v. Cross, 33 Cal. 60; Lander v. Beers, 48 Cal. 547. A mere surmise that there may have been negligence on the part of the defendants would not justify the judge in leaving the case to the jury. Peet v. Co. 47 N. W. 532.

*McLaughlin & McLaughlin* for respondent.

The filing of an instrument consists in presenting it at the office where it is to be filed, leaving it there and depositing it in the proper place with the papers in the office. Bishop v. Cook, 13 Barb. 326; Dodge v. Potter, 18 Barb. 193; 2 Wait's Actions and Def. 195.

It is the province of the jury to pass upon the evidence. Marshall v. Harney, 47 N. W. 291; Rauber v. Sundback, 46 N. W. 927; The appellate court will not order a new trial if there is a conflict in the evidence. Hayne on New Trial and App. §§ 97 and 289.

BENNETT, J. This was an action by an indorsee of a negotiable promissory note against its maker. The defendant alleges in his answer that the note was not transferred to the plaintiff for value before maturity and in the ordinary course of business, and sets up counter-claims against the original payee

of the note, claiming partial failure of consideration for which the note was given. The action being founded upon a negotiable promissory note alleged to be in the hands of an innocent purchaser for value before maturity, no defenses against the note could be made available unless it could be established that the transfer to the alleged holder was not valid. The allegation of the answer is that "the assignment and endorsement of said note was without consideration, and for the purpose of preventing this court from acquiring jurisdiction over said company, and to defeat the defendant from setting up his defenses and counter-claims against it." This allegation was denied in the reply of the plaintiff.

The issues thus raised present a pure question of fact which is to be determined by evidence. Upon the trial all the testimony consisted of the depositions of George N. Bierce, Dudley Stone, and R. N. King, which were introduced by the defendant, but were taken and procured by the plaintiff. To the introduction and reading of these depositions the plaintiff objected: *First,* because they had never been filed in the court; and, *second,* because the fees for the taking of the same had not been paid by the defendant before allowing him to have the benefit of them. These objections were overruled, exceptions were taken, and this ruling of the court is assigned as one of the errors.

The abstract shows that upon the wrapper or envelope inclosing these depositions was the following endorsement: "Received on this 20th day of May, 1890. R. H. DRISCOLL, Clerk Circuit Court, Lawrence County;" and: "Opened at request of plaintiff's attorney, this 20th day of May, 1890. R. H. DRISCOLL, Clerk." Was this a filing within the meaning of Section 5296, Comp. Laws, which says: "Every deposition intended to be read in evidence on the trial must be filed at least one day before the trial?" The statute (Section 5292) provides that depositions shall be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and by him addressed and transmitted to the clerk of the court, there to remain until opened by the clerk by order of court or at the re-

quest of a party (or his attorney) to the action. A paper is said to be on file when it is delivered to the proper officer and by him received to be kept on file. Bouv. Law Dict.; Fulkerson v. Houts, 55 Mo. 302. Filing a paper consists in placing it in the proper official's custody by the party charged with this duty, and the making of the proper indorsement by the officer. And. Law Dict. In modern practice "the file" is the manner adopted for preserving papers; the mode is immaterial. Such papers as are not for transcription into the records are folded similarly, indorsed with a note or index of contents, and tied up in a bundle. "A file," Id. The statute quoted above makes it the duty of the officer taking a deposition to seal it up and indorse the title of the case in which it is to be used, and the name of the officer taking it, and then to address and transmit it to the clerk of the circuit court where the action is pending. When this is done, and it is received by the clerk, it is delivered to the proper officer, and placed in the custody of the proper official. The endorsement of the title of the cause has already been placed upon it, as directed by statute. Nothing more remains, except placing the date of its reception by the clerk, to make it a proper filing. The clerk cannot break the seal of the envelope or wrapper, except by order of the court, or at the request of a party to the action or his attorney. The object of the provision of Section 5297 evidently was to afford adverse parties the opportunity to examine the deposition to be used on the trial of the case, that they might take advantage of objections, if any, they wished to urge. Depositions cannot be used in the trial of a cause upon the same day of their reception, but as soon as received by the clerk of the court they can be opened by him, on request of either party to the action, and the object of this section can be attained. It has been held in the case of mortgages that the filing consisted in presenting the mortgage at the office and leaving it there, and depositing it in the proper place, with the papers in the office. Neele v. Berryhill, 4 How. Pr. 16; Dikeman v. Puckhafer, 1 Abb. Pr. (N. S.) 32; Harlow v. Birger, 30 Ill. 425. If this is a sufficient filing for

so important a paper as a mortgage, it certainly must be for depositions, to be used as testimony in a trial case.

As to the objection that the deposition could not be used by the defendant because the fees for taking it had not been paid by him, we think it clearly untenable. If any fees were due to the officer for taking the depositions, or to the clerk or other officers of the court for services performed, it was a matter for them to raise and not the plaintiff. The ultimate payment of these fees would be a question of costs at the determination of the suit. The papers were properly before the court, and subject to its disposal.

The other point presented is that the evidence was insufficient to justify the findings of the jury on the questions of fact submitted to it. At the threshold of this question we are met by the objection that this court will not review the judgment on account of the insufficiency of the evidence to support it, if there is any conflict in the testimony material to the issue, for the reason that the almost universal rule is that an appellate court will never disturb a verdict if there is a substantial conflict in the evidence. This is unquestionably the rule, but where there is no evidence, or when the verdict is wholly unsupported by evidence, this court should interfere, and grant a new trial in furtherance of the ends of justice. There is a distinction to be made between a preponderance or weight of evidence and a question of no evidence. A jury is, from the very nature of its functions, the rightful and legitimate branch of the court to determine the facts in a case submitted to it. From its peculiar organization it is the most competent to test the credibility which is to be attached to the witnesses, and to weigh their evidence and find accordingly. It must, therefore, be a case glaring and palpable which would induce this court to interfere, and disturb the jury's finding. In examining the testimony in the case at bar, we find that portion of it bearing upon the vital point at issue, viz: whether the note upon which the action is based was duly assigned and transferred to the plaintiff before maturity and in the ordinary course of business

for value, was taken and produced before the court and jury in the form of depositions. This court will, therefore, have the same opportunity of determining its credit and weight as would the trial court and jury. The material issue was the bad faith of plaintiff in the aquisition of the note in suit. The question then, for our determination is, was there any evidence to sustain the issue? Section 4470, Comp. Laws, says: "The signature of every indorser of a negotiable instrument is presumed to have been made for a valuable consideration, before maturity of the instrument, and in the ordinary course of business." The whole evidence upon the transfer of the note is contained in the deposition of Dudley Stone, the plaintiff, and R. N. King, the treasurer of the Stilwell & Bierce Manufacturing Company. Stone swears that he had business transactions with the company for a period of 25 years; that he was the owner of real and personal property to the value of $25,000 to $30,000; that he obtained the note in controversy from Mr. King, the treasurer of the payee company; that at the time of its purchase the company was indebted to him about $1,700; that he took this note and others in part payment of his claim; that this had been his custom, or, at least, he had at numerous times before taken notes belonging to the company. Sometimes the company endorsed them; at other times they endorsed "Without recourse;" and if the notes were secured he took them with that kind of indorsement. He had never had any trouble in getting his money on any other note taken of the company. The treasurer of the company told him this note was all right, and he took it at its par value. Subsequently he had it discounted at the bank, and the company credited him up with the discount. The note was transferred to him before maturity. At the time of taking the note he did not know anything of the financial standing of Mr. Crow, the defendant, but he understood from Mr. King, the treasurer of the company, that he was good. The company claimed the note was good, and it was taken on their representation. The plaintiff is the present owner of it, and the real party in interest in this suit. He did not know the consideration for the note; nor had he any

knowledge that would lead or cause him to believe that
there would be any defense to it; nor had he any intention by
the purchase of the note, to prevent defendant from making
any defense to it that he might have. King, the treasurer, of
the company, testified: "I am, and have been for 12 years,
treasurer of the Stilwell & Bierce Manufacturing Company. I
have known plaintiff ever since my connection with the com-
pany. I do not know defendant personally. The note in suit,
with two others of $500 each, was received of Mr. Crow on ac-
count of purchase of milling machinery by him from Stilwell &
Bierce Manufacturing Company, sold under written contract.
Mr. Crow's complaints as to quality of the machinery were made
while we owned the notes. We did not give much heed to them
as we felt sure he made them simply to delay paying us the
balance at this time. We heard from other manufacturers that
this was his habit. These objections I think were made to pay-
ing the balance due on account. I think, after the collection of
the account had been pressed, he threatened to make further
claims if we did not settle his way. When these notes were re-
ceived they were filed with our other notes, and kept there until
they were sold to Mr. Dudley Stone, who is now their owner, so
far as I know. They were sold to him early in September, 1889,
before the maturity of any of them, for cash, or, rather, in lieu of
money due him from the company, for their face value. I
think there was two or three months of accrued interest. The
notes were secured by mechanic's lien on Crow's mill property.
This purchase came about in the usual course of business, We
had been in the habit of giving Mr. Stone our own notes and
very frequently our customers' notes, all in payment on ac-
count of his contract with us for hauling our goods to and from
the depots. Mr. Stone has been doing this work for us ever
since my connection with the company,—some twelve years.
He has owned his own horses and drays. I should think his
work has been about $15,000 a year on an average. At the
time of the sale of these notes to him we owed Mr. Stone about
$1,700 for bills that he had turned in, and probably several
hundred dollars for work not yet billed to us. Mr. Stone had

no knowledge whatever in regard to the notes, except that I told him the notes were secured, and were good without any question. He took the notes, as he had always taken notes from us, relying upon my statements. As far as my knowledge goes, all the notes taken by him previously were paid without any difficulty. Mr. Stone was the owner of the note sued on at the time the suit was brought, and, so far as I know, is now the the owner of them, and is the real party in this suit. He owns considerable real estate, and is probably worth $15,000 or more. Cross-examination: I think we have received favorable reports from the commercial agencies as to Mr. Crow's ability to pay, but learned from other manufacturers that he was a very unpleasant man to deal with,—contentious,—before we assigned the notes to Mr. Stone. Mr. Stone is not a man of much education. I think his business experience has been mostly in the line of his own business and occasional dealings in real estate. He has been quite successful. I do not know whether he relies upon our statements as a basis of all settlements between us. He must have confidence in us, as we have never had any difficulty with him of any kind regarding settlements and payments on account of his contract. I made the endorsements on these notes 'Without recourse.' The fact is, the notes were abundantly secured, and I knew them to be perfectly good; and although Mr. Crow was reported to be a contentious man, I believed the notes would be paid, and so sold them to Mr. Stone. The indorsements on notes given us by Mr. Stone are generally simply our company's indorsement. We have in some cases, in the case of secured notes, indorsed them to him 'Without recourse.' I think Mr. Stone consulted Mr. Cain, our bookkeeper, regarding the notes, after the one in suit was purchased; and I think he (Cain) had them in his possession at the time. Besides this, the company did not, nor did any member of the company, or employe or officer of the company, have possession of them to my knowledge. I knew of Mr. Cain's having them through Mr. Stone's deposition, given yesterday." This was all the evidence introduced on this point.

The *onus* of proof rests upon the defendant. The pre-

sumptions are in favor of the plaintiff. In the evidence of Stone and King rests the whole of defendant's case. In their evidence we are unable to find a *scintilla* of proof to support the verdict upon this issue. The only facts and circumstances that could ever raise a suspicion of any collusion between the payee and plaintiff is the fact of their being employer and employe; but this is rebutted by the fact that many similar transactions have taken place between them before this. The plaintiff appears to be a man in quite comfortable circumstances, doing a large business each year, in his line, with the original payee, and has taken notes before of the company for his pay. Such has been his custom for a series of years, and he has never had any trouble before. He positively denies any knowledge of any defense to these notes at the time he took them. The presumption of law is in the plaintiff's favor, and the positive evidence is clearly so. We think on this point in the case there was no proof in support of the verdict. It is not, therefore, a case of conflict of evidence, which the court would decline to way, but of the entire absence of evidence. The verdict should not be allowed to stand, and a new trial should have been granted. Judgment reversed, and cause remanded for a new trial. All the judges concurring.