COLER *et al.* v. RHODA SCHOOL TOWNSHIP OF CHARLES MIX COUNTY.

1. In construing section 10, c. 14, Laws 1879, which provides that "it shall be the duty of the county superintendent of schools, in addition to other

duties required of him, to divide his county into school districts and subdivide and re-arrange the boundaries of the same, when petitioned by a majority of the citizens residing in the district or districts to be affected by said change, if he believes such change to be for the good of the public schools, and to furnish the county commissioners of such county with a written description of the boundaries of such district, which description must be filed in the register of deeds' office, before such district thall be entitled to proceed with its organization, by the election of school district officers," it is *held* that no petition is contemplated or required in order to authorize a county superintendent in the first instance to divide his county into school districts.

2. Further, that the production at the trial, by the legal custodian of the files and records of the board of county commissioners, of a written description of a district thus created, containing no file mark thereon, but which was found by the witness in a file box, together with other papers relating to said school district, in the office of the register of deeds, is sufficient, in the absence of evidence to the contrary, to sustain the presumption that the county superintendent complied with the law by furnishing said description to the county commissioners, and that the same was filed in the office of the register of deeds before the election of school district officers.

3. Where a majority of the electors of a legally organized school district present and voting at a special meeting held by the *de facto* or *de jure* officers of said district for the purpose of voting bonds with which to build and furnish a school house are in favor of the bonds, which are afterwards issued, in accordance with the vote then taken, and sold for full value to an innocent purchaser, and a school house is erected and furnished with the proceeds thereof, and teachers are employed and schools are maintained therein, and the first installment of interest upon said bonds is promptly paid at maturity, the fact that said school board submitted the question of bonding the district without having been petitioned in writing by a majority of the resident electors, and without giving the notice required by statute, is not sufficient to invalidate, in the hands of an innocent purchaser, bonds upon the face of which the officers of the district have place a recital of authority and regularity, which imports a strict compliance with all the statutory requirements in regard to conditions precedent to the issuance thereof; and in an action by a *bona fide* holder against the district, or another standing its place, such recitals can be neither impeached nor questioned in order to defeat a recovery upon interest coupons attached thereto.

4. The doctrine of repeal by implication will not be applied when two affirmative legislative enactments relating to the same subject are clearly susceptible of a construction that will render both operative.

5. Chapter 24 of the Laws of 1881, conferring power upon school districts to issue bonds, was not repealed by any of the provisions of the Laws of 1883.

(Syllabus by the court.   Opinion filed April 26, 1895.)

Appeal from circuit court, Clay county. Hon. E. G. SMITH, Judge.

Action to recover on interest coupons detached from school district bonds. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*John L. Pyle,* for appellants.

It is neither the duty nor the province of courts to construe two separate acts, so that the latter of the two must of necessity repeal the former. Wis. v. Brown, 1 Wis. 442; Coln v. Dwight, 55 N. W. 587.

A repeal by implication is not favored; on the contrary courts are bound to uphold the prior law if the two acts may well subsist together. 5 Mass. 382; 2 Pick. 176; 3 Bibb 180.

Recitals contained in the bonds to the effect that the bonds were issued under and in pursuance of and in conformity with the provisions of an act of the legislature, entitled an act to empower school districts to issue bonds for building school houses, and by a vote of the district at a special meeting, and upon the back of the bonds a certificate showing said bonds to be issued in accordance with the vote of the school district, estop the corporation from setting up any irregularities in the manner of holding the election or the publication of notices beforehand. Town v. Eaves, 92 U. S. 484; Knox v. Aspinwall, 21 How. 544; Mason v. Miami, 2 Black 732; Potter v. Choffe, 12 S. Ct. Rep. 216.

*French & Orvis,* for respondent.

An order of the county superintendent creating or describing the new district would be void unless preceded by the petition of citizens residing in the district to be affected. Dartmouth v. School, 6 Dak. 232; Biglow v. Gregory, 73 Ill. 179;

Jackson v. Trustees, 8 Johns. 378. The question of the regularity of the election of officers frequently cannot be raised, but that the body corporate for whom they attempted to act never existed can always be made an issue. Norton v. Shelby, 118 U. S. 425; Dillon on Municipal Corporations, sec. 276.

There is no presumption arising from the discovery of an instrument in an office that it was left there for the purpose of filing or that it was left with the proper officer. Phillips v. Been, 38 Ala.; Sampson v. Falls, 6 Ind. 309; Engleman v. State, 2 Ind. 91. Municipal corporations have no power without express legislative authority to borrow money or to issue negotiable securities. Nashville v. Ray, 19 Wall 468; Nashville v. Ludly, 19 Wall, 485; Well v. Supervisors, 103 U. S. 625. A total want of power renders the contract void; an irregular exercise of power may be ratified or an estopel exist. Treadway v. Schnauber, 1 Dak. 248; Turnpike v. Board, 72 Ind. 234; Cullin v. Carthage, 103 Ind. 196; Moore v. Mayor, 73 N. Y. 239; Parkersburg v. Brown, 107 U. S. 237. Unless a municipal corporation has power to make a contract it cannot ratify it. Tottman v. San Francisco, 20 Cal. 98; Herzo v. San Francisco, 33 Cal. 134. To bind the people by recitals the officer issuing the bonds must have power to judicially determine those acts performed which he recites. Harsh v. Fulton, 10 Wall, 676; Clark v. Des Moines, 19 Ia. 199.

FULLER, J. By virtue of certain provisions of chapter 44 of the Session Laws of 1883, plaintiff brought suit against the defendant for the amount of a number of overdue interest coupons detached from bonds purporting to have been issued by school district number 13 according to the provisions of chapter 24, Laws 1881, and it is alleged that said district was organized as provided by section 10 of chapter 14, Laws 1879. Rhoda school township defended upon the theory that district number 13 never had a legal existence, and that the bonds in question

were unauthorized, irregularly issued, and void.   A trial of the court without a jury resulted in a judgment for defendant, from which, and from an order overruling a motion for a new trial plaintiff appeals.

While 17 distinct findings of fact were made by the learned court, the decision seems to be predicted upon the first four, which are as follows:   "(1) That no petition for the organization of the alleged school district No. 13 of Charles Mix county, territory of Dakota, signed by a majority of the citizens residing in said alleged school district, or any petition whatever asking or praying for an organization of said alleged school district, was presented to the county superintendent of schools of said Charles Mix county prior to the issue of the alleged bonds and coupons sued on in this action, or at all.   (2) That no written description of the boundaries of said alleged school district No. 13 was furnished to the county commissioners of said Charles Mix county, or filed in the office of the register of deeds of said county, prior to the issue of the alleged bonds and coupons sued on in this action, or at all.   (3) That no petition praying or requesting that alleged school board of said alleged school district No. 13 to call an election of the electors of said alleged school district No. 13 for the purpose of voting on the question of issuing school bonds of said alleged district, signed by a majority of the qualified electors residing in said alleged school district No. 13 of said Charles Mix county, or any petition whatever praying said alleged school board to call an election for the purpose of voting on the question of issuing the bonds of said alleged school district No. 13, was presented to said alleged school board prior to the issue of the alleged bonds and coupons sued on in this action, or at all.   (4) That the evidence does not show that notices were posted in three public conspicuous places in said alleged school district No. 13, stating the time and place of the meeting of the electors for the purpose of voting upon the question of issuing the bonds of the said alleged school district, or stating the amount of the

bonds necessary or that would be required to be issued, of the time when the same should become payable, twenty days before the day of such election, nor that any notices of such election whatever where so posted."

A consideration of the case requires an examination of the legislative enactments above cited, and that portion of section 10 of the Laws of 1879 to which our attention is directed by the first two findings of fact is as follows: "It shall be the duty of the county superintendent of schools, in addition to other duties required of him, to divide his county into school districts, and subdivide and rearrange the boundaries of the same, when petitioned by a majority of the citizens residing in the district or districts to be affected by said change, if he believes such change to be for the good of the public schools, and to furnish the county commissioners of such county with a written description of the boundaries of each district, which description must be filed in the register of deeds' office before such district shall be entitled to proceed with its organization by the election of such school district officers. It shall be his duty to keep on file in his office all petitions and remonstrances, which shall show the date of reception and the action had thereon; and it shall be his further duty on the division of, or change of district boundaries, to notify the clerk of the districts interested of the change made." Laws 1879, c. 14, sec. 10. Prior to the creation of the district, no petition signed by citizens was presented to the county superintendent, and the only written evidence that the superintendent furnished the county commissioners with a written description of the boundaries of the district, to be filed in the office of the register of deeds, is contained in the following exhibit, for identification marked "B," which was offered and received in evidence: "To the Honorable clerk of Charles Mix County: The county superintendent of schools has formed school district No. 13, of which the following is a description: Section three (3), four (4), township ninety-eigh (98) range sixty-seven (67), and sections twenty-seven (27)

twenty eight (28), twenty nine (29), thirty-two (32), thirty-three (33), thirty-four (34), township ninety-nine (99) range sixty-seven (67), all in Charles Mix county. W. A. Shunk, Superintendent of Public Schools of Charles Mix County. Dated this 2d day of February, 1883." Apparently attached to or indorsed upon the foregoing exhibit is the following memorandum: "By forming district No. 13, section 4 was taken out of district No. 12 and attached to district No. 13." James H. Exon, county auditor, testified, in substance, that he was the custodian of the papers, records and files of the county commissioners; that he found in his office Exhibit B, and other papers relating to Rhoda school township, together with the official bond and two separate reports of the treasurer of school district No. 13; and that he received in his official capacity the file box containing such papers on the 6th day of January, 1881, from J. W. Beezeley, late register of deeds and county clerk, and that neither of said papers contained upon it the filing mark. Although it does not authoritatively appear that section 4 was ever a part of another school district, we may assume such to be the case, and yet conclude from the evidence that, so far as district No. 13 is concerned, the action of the county superintendent in creating said district did not involve the subdivision and rearrangement of the boundaries of districts previously in existence. Viewed in the light of former legislation and the various amendments relating to the creation of school districts, we are of the opinion that a petition is neither contemplated nor required in order to authorize a county superintendent in the first instance to organize a school district. It is declared to be his duty to divide his county into school districts, and to furnish the county commissioners with a written description of the boundaries thereof, and afterwards, if he believes a subdivision or rearrangement to be for the good of the schools, he may make a change, provided a majority of the citizens residing in the district or districts to be affected by said change have first peti-

tioned him to do so.    The requirement of a petition by the residents of a school district, in order to authorize a rearrangement or subdivision, presupposes the organization and existence of a district; and we are therefore of the opinion that the action of the county superintendent in setting apart the various sections specified in Exhibit B, and in organizing said territory as school district No. 13, is fully sustained by that portion of section 10 which expressly makes it the duty of such officer to divide his county into school districts.    The presumption is that a public officer performs such acts as the law expressly imposes upon him, and that presumption is in this case fortified by the fact that Exhibit B was placed in the office of the register of deeds, and was produced upon the trial by the custodian of the files and records of the board of county commissioners, to whom it was the duty of the superintendent to furnish, in the nature of a condition subsequent, a written description of the boundaries of all school districts organized by him in the county of which he was superintendent.    An absolute failure to furnish the county commissioners a written description of the boundaries of a district, or to file the same in the office of the register of deeds, before the election of school-district officers, would not destroy the corporate existence of such district, and, as between the public and the corporation, the persons thus chosen and qualified would be the *de facto* officers thereof. Moreover, we are disposed to regard the evidence sufficient to show a substantial compliance with the statute requiring a written description of the boundaries of the district to be furnished the county commissioners; and the delivery of such paper to the register of deeds, and the placing of the same in a separate box, designed to contain the files relating to said district, without a file mark thereon showing the exact time that the same was received by said officer, was not an irregularity that would invalidate proceedings to elect school district officers. Comp. Laws, sec. 3272; Stone v. Crow, 2 S. D. 525, 51 N. W. 335, and cases there cited.

The evidence shows that, subsequently to the action of the county superintendent above mentioned, an election was held in the district, at which Silas M. Gregg was elected to the office of director, Millard F. Bailey to the office of clerk, and J. W. Bailey to the office of treasurer, of said district number 13, and that each of said officers qualified according to law, and all entered upon and performed their respective duties as officers of said district. The records of the district show, and the court found, that frequent regular and special meetings of the school board were held, and teachers were employed after the completion of the school house for the construction and furnishing of which the bonds in question were issued, and that two terms of school were conducted therein, and the first year's interest upon the bonds in suit was paid by said district to plaintiff; that after the issuance and sale of the bonds, and the performance of the various acts above specified, the defendant, Rhoda school township, was duly organized, pursuant to chapter 14, Laws 1883, and the territory comprising district number 13 was included therein. The last two findings of fact are as follows: "(16) That defendant township afterwards, on, to wit, June 21, 1884, formerly adjusted and settled all matters between it and said district number 13, and said defendant then duly received and accepted from said school district number 13 its school house, school furniture, and other school property, and that said defendant township then also entered of record in its proper school records such settlement and acceptance of said schoolhouse, school furniture, and other school property; that said defendant has at all times since said settlement and acceptance of said schoolhouse, school furniture and other school property of said alleged school district number 13 exercised exclusive acts of ownership over it, ever since then exclusively taught school in said school house, and used it generally tor school purposes; that in, to wit, the month of November, 1884, said defendant township moved said school house it had thus acquired one mile south of its original site, namely, to section

ten of township ninety-eight of range sixty-seven, in said Charles Mix county, where the same has ever since remained, and still remains; that said school house and school property has at all times since its acquisition by defendant been within the limits of defendant township. (17) That plaintiffs bought said bonds in good faith, for full value, before maturity, in the usual course; that they relied on the recitals contained in the bonds, and the certificates indorsed thereon showing regularity; that plaintiffs knew nothing of the alleged irregularity or defect in the organization of said school district number 13, or in the issuance of said bonds, claimed by said defendant." Section 144, c. 44, Laws 1883, provides that "every school township shall be liable for and shall assume and pay fully, according to their legal tenor, effect and obligation, all the outstanding bonds and the interest thereon, of every school district, the school house and furniture of which are received and included within the school township and owned thereby, the same as if said bonds had been issued by said school township; and the law which authorized the school district to issue bonds shall apply to the school township the same as if it had originally been authorized to issue, and had issued the said bonds. The bonds shall be deemed in law the bonds of the school township, with the validity for securing and enforcing the payment of principal and interest that they would have against the district that issued them." It will be observed that the relation is not changed by the adjustment, and while the defendant township by succession has become the owner of the property of the district, and has assumed its liabilities, it has all the right that said district ever enjoyed to contest the validity of the bonds involved in this suit, but it has acquired no different or additional rights. Chapter 24 of the Laws of 1881 relates to, authorizes, and prescribes the methods by which a legally constituted school district may, by a majority of its electors, issue bonds for the purpose of building and furnishing a school house,

and requires notices stating the time and place of meeting, the amount of bonds to be issued, and the time of their maturity to be posted in at least three public places within said district at least 20 days before the election; and it further provides that the question of issuing bonds shall not be submitted to a vote until the district school board shall have been so petitioned, in writing, by a majority of the resident electors of said school district. It is quite clear that no written petition was presented to the school board prior to the submission to the electors of the district of the question of issuing bonds, and the evidence is in conflict as to whether the required election notices were posted as provided by law. The court found that neither of these requirements had been complied with prior to the elec-tion or issuance of the bonds, and, although notices of some sort were doubtless posted, we are disposed to believe, in the absence of evidence to the contrary, that neither of such find-ings should be disturbed.

Counsel for appellant contend that respondent is estopped from taking advantage of any irregularities or omissions on the part of the district in holding the election, and is precluded from raising the question involved in said findings of fact, by the following recital of each bond and the certificate placed upon the back thereof: "This bond is issued on the 26th day of March, 1883, by school district No. 13, county of Charles Mix, D. T., for building, and furnishing a schoohouse, under and in pursuance of, and in strict conformity with, the provis-ions of an act of the legislative assembly of the territory of Da-kota entitled, 'An act to empower school districts to issue bonds for building school houses,' approved March 3, 1881, and of a vote of said district at a special meeting held on the 26th day of March, 1883. In witness whereof said school district No. 13 has caused this bond to be signed by its director and clerk, this 26th day of March, 1883. Silas M. Gregg, Director. Millard F. Bailey, Clerk." "I certify that the within bond is issued in accordance with a vote of school district No. 13, Charles Mix

county, territory of Dakota, at a special meeting held on the 26th day of March, 1883, to issue bonds to the amount of seven hundred and fifty dollars.   [Signed] Millard F. Bailey, Clerk.'' By virtue of the statute, the district in question existed as a *de jure* corporation as soon as the county superintendent had sesregated the various sections included in Exhibit B from other portions of the county, and had given to such territory the name of ''School District Number 13," and such corporation was entitled to proceed with its organization by the election of school district officers to the respective places of trust already created as soon as a description of its boundaries thereof were furnished to the county commissioners and filed in the office of the register of deeds.   In contemplation of law, an office is an entity, and may exist before an incumbent has been elected or appointed.   Bank v. McKinney, 2 S. D. 106, 45 N. W. 203; People v. Stratton, 28 Cal. 382.   While Exhibit B, dated February 2, 1883, bears no indorsement showing the day of its reception by the county commissioners or register of deeds, it will be presumed in the absence of anything to the contrary, that the county superintendent knew the law, and substantially complied with it by duly furnishing the county commissioners said written description of the boundaries of the district, and that the same was by the register of deeds placed among the files of his office before the school district officers were elected and qualified; and we therefore conclude that said director, treasurer, and clerk were legally elected, qualified, and acting officers on the day said bonds were executed, and at and prior to the time the question of issuing the same was at a special election submitted to the voters of said school district number 13.

Section 32, c. 14, Laws 1879, provides that ''every school district shall be deemed organized when the officers constituting the district board shall be elected and qualified."   It is conceded that a special election was held for the purpose of submitting the question of issuing the bonds in suit, and that a majority of the qualified electors voted in favor of bonding the

district for the purpose of building and furnishing the school house now owned and occupied by the defendant, and for which it refuses to pay. In our opinion the defendant is estopped by the recitals in the bonds, and the certificate attached thereto, made and executed by the authorized officers of the district, who were charged with a knowledge of the law, and whose duty it was to know the facts, and to tell the truth, or remain silent concerning such as were peculiarly within their knowledge. The legislature clothed district number 13 with full power to issue the bonds in suit, and a *bona fide* holder may rely upon the recitals therein contained, to the effect that the power had been properly exercised, when such recitals are made by the legally authorized representatives of the corporation, for the sole purpose of inducing purchasers to invest their money, and the defendant is estopped to deny the truth of such statements. Being in a position no more favorable than the original district, Rhoda school township cannot resist payment because of irregularities on the part of the district in exercising a power conferred upon it. The taxpayers are in no way injured, as they have the school house and furniture for which the bonds were issued. They remained silent and passive when they should have spoken and acted. They are charged with a knowledge of the irregularities in submitting the question of bonding the district, and could have stopped the proceeding by injunction. But they were grossly negligent. The bonds were issued and sold. The school house was erected, furnished and paid for with plaintiff's money. Schools for the benefit of the taxpayers were conducted therein by teachers employed by the district. Interest was paid to plaintiff as it matured upon the bonds until the property of the district, including the school house in question, was turned over to, and its liabilities were expressly assumed by, the school township. By permitting the defendant to gratuitously retain the property we would, in effect, sanction a fraud, and allow the taxpayers to take advantage of their own wrong. Considerations of good

faith, common honesty, and a regard for the peace and pros-
perity of society demand that the doctrine of estoppel be applied to the conduct of the defendant, as well as to the recitals
contained in the bonds.    Brown v. Bon Homme Co., 1 S. D. 216;
46 N. W. 173; Lane v. Embden, 72 Me. 354; Moran v. Commissioners, 2 Black 722; Town of Colomo v. Eaves, 92 U. S. 484;
St. Joseph Tp. v. Rogers, 16 Wall 644; Commissioners v. Aspinwall, 21 How. 539; Orleans v. Platt, 99 U. S. 676; Shurtleff
v. Wiscasset, 74 Me. 130; National Life Ins. Co. v. Board of
Education of City of Huron, 10 C. C. A. 637, 62 Fed. 778,
citing, with approval, Coler v. School Tp. (N. D.) 55 N. W.
587.    The distinction between this case, as we view it, and
Dartmouth Sav. Bank v. School Dists. Nos. 6 and 31, 6 Dak.
332, 43 N. W. 822, relied on by respondent's counsel, is so clear
that it cannot be regarded as a case in point, and therefore requires no attention at this time.

Counsel for respondent contend that the bonds in suit are
void because the law of 1881 conferring power upon school districts to issue bonds for the purpose of building and furnishing
school houses was repealed by the law of 1883, passed and approved 18 days before the issuance of said bonds; but, from a
regardful examination of the various provisions thereof, we are
disposed to conclude that school district number 13, created in
accordance with the provisions of the 1879 law, existed for
every purpose, uninfluenced by the Laws of 1883, until its corporate identity was merged into and lost by the organization of
the school township pursuant to the Laws of 1883, and the court
expressly found "that long after the bonds had been sold to
plaintiff, in the summer of 1883, Rhoda school township, the
defendant herein, was duly organized, * * * and that in
the fall of 1883 an election was held by said defendant, at which
the name of 'Rhoda School Township' was adopted."    To review and discuss the numerous provisions of chapter 44, Laws
1883, from a careful consideration of which we reach the conclusion that the legislature did not intend to deprive the school

district of any of its powers until the township organization was effected, would require an unprofitable extension of a necessarily voluminous opinion. The judgment of the trial court is reversed, and a new trial is awarded.

KELLAM, J. While concurring in the reversal of this case, I rest my concurrence in the decision of the first question involved, to wit, the legal existence of school district No. 13 upon these grounds: Under section 10, c. 14, Laws of 1879, referred to in the opinion, the county superintendent was authorized to originally divide the county into school districts without petition, but to subdivide and rearrange the same only "when petitioned by a majority of the citizens residing in the district or districts to be affected by said change." The finding of the trial court is that no petition was presented to the superintendent, but it is left entirely an open and unsettled question whether the pre-existing conditions were such as require a petition or not. This is a material issue without an answer, to which it is impossible to know whether the court's first conclusion of law, that the alleged school district "never was legally organized," is correct or not. The abstract affirmatively shows that only a part of the evidence before the trial court is certified to us, hence we are not in position to discuss or determine that question of fact. Without committing myself to the argument of the opinion, I agree that there should be a new trial.